PAUL GANCI *et al.*, Plaintiffs, v. GARY BLAUVELT, Defendant and Third-Party Plaintiff-Appellant (Kenneth R. Deihl, Third-Party Defendant-Appellee).

Fourth District  No. 4—97—0324

Argued October 21, 1997.—Opinion filed January 22, 1998.—Rehearing denied March 6, 1998.

R.W. Deffenbaugh (argued), of Springfield, for appellant.

Karen L. Kendall and Brad A. Elward (argued), both of Heyl, Royster, Voelker & Allen, of Peoria, and Frederick P. Velde and Steven C. Rahn, both of Heyl, Royster, Voelker & Allen, of Springfield, for appellee.

JUSTICE GREEN delivered the opinion of the court:

On June 8, 1992, plaintiffs, Paul Ganci, Marie E. Secker, Jo Anna Claycomb, and Rosalie Jones, brought suit in the circuit court of Sangamon County against defendant and third-party plaintiff, Gary Blauvelt, and third-party defendant, Kenneth R. Deihl. Plaintiffs are the natural-born children of Leonard Ganci, and Blauvelt is the natural-born child of Delores Ganci, who was Leonard's wife. The complaint alleged Blauvelt and Deihl, an attorney-at-law, wrongfully deprived plaintiffs of a portion of Delores' estate to which they were entitled. In September 1996, plaintiffs dismissed their complaint as to Deihl.

On December 27, 1996, Blauvelt filed a third-party complaint against Deihl seeking contribution in regard to any judgment. On April 1, 1997, the court allowed Deihl's motion to dismiss the third-party complaint pursuant to section 2—619(a)(5) of the Code of Civil Procedure (Code) (735 ILCS 5/2—619(a)(5) (West 1996)) as untimely under sections 13—214.3(b) and 13—204(b) of the Code (735 ILCS 5/13—214.3(b), 13—204(b) (West 1996)).

In its order of dismissal, the circuit court made a finding pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)) making that order appealable. Blauvelt has appealed, contending that, under the complex statutory scheme involving third-party claims, his claim was timely. Deihl maintains the trial court correctly ruled the third-party claim was untimely. He also seeks to support the trial court order for the first time on appeal on the theory the third-party complaint was void because Blauvelt failed to obtain the court's

permission to file the complaint, as required by section 2—406(b) of the Code (735 ILCS 5/2—406(b) (West 1996)). We hold the third-party complaint was not barred by section 13—214.3(b) or 13—204(b) of the Code and failure to obtain the trial court's permission to file the third-party complaint did not void it. Accordingly, we reverse and remand.

The substance of the complaint was as follows: (1) in January 1985, Deihl prepared a joint and mutual will for Leonard and Delores; (2) the will devised each one's estate to the other upon the death of the first and for the estate of the survivor to each of the plaintiffs and Blauvelt in equal shares; (3) the wills named plaintiff Ganci and Blauvelt as coexecutors; (4) Leonard died first, in December 1987; and (5) on or about January 15, 1988, Deihl mailed a copy of the joint and mutual will to all plaintiffs and Blauvelt, advising them that opening an estate was unnecessary because Leonard's property was held in joint tenancy.

The complaint further alleged that (1) on or about January 23, 1988, Delores retained Deihl to prepare a new will; (2) this document purported to bequeath all of Delores' property, including that obtained upon Leonard's death, to Blauvelt; (3) Delores also placed all of the property she obtained upon Leonard's death in joint tenancy with right of survivorship in favor of herself and Blauvelt; (4) Delores died in June 1991, at which time her will was admitted to probate and Blauvelt was named executor; and (5) sometime after Delores' death, Blauvelt admitted he was not entitled to most of what he received from Delores and agreed to share equally with each of the plaintiffs but only distributed approximately one-fifth of the assets he had agreed to share. In separate counts, plaintiffs asked for (1) a determination that the will of Leonard and Delores was joint and mutual, (2) imposition of a constructive trust on the property coming from Leonard and Delores, and (3) money damages.

In Blauvelt's third-party complaint, he alleged, in part, as follows:

> "In the event that a judgment is entered in favor of the [p]laintiffs and against [Blauvelt], *** [Blauvelt] is entitled to a *right of contribution* from [Deihl] in an amount equivalent to [his] culpability in drafting the will of Delores M. Ganci and in an amount equivalent to his culpability in advising [Blauvelt] and acting as attorney for the estate while [Blauvelt] was acting as [e]xecutor for the [e]state." (Emphasis added.)

■ We consider first the timeliness of Blauvelt's third-party complaint. His most serious contention in that regard is his assertion the complaint was barred by section 13—204(b) of the Code. Blauvelt

maintains section 13—204 is inapplicable because his claim is for indemnity rather than contribution, but this would make no difference because section 13—204(c) states that section 13—204 is applicable to either contribution or indemnity claims. 735 ILCS 5/13—204(c) (West 1996). In any event, implied indemnity arises in cases of vicarious liability. *American National Bank & Trust Co. v. Columbus-Cuneo-Cabrini Medical Center*, 154 Ill. 2d 347, 350, 609 N.E.2d 285, 287 (1992); *Allison v. Shell Oil Co.*, 113 Ill. 2d 26, 29, 495 N.E.2d 496, 498 (1986). Here, the third-party complaint is based upon Deihl's culpability in drafting Delores' will and in advising Blauvelt, all to the damage of plaintiffs. Thus, the liability is not alleged to be vicarious but one that is shared because of the combined actions of Blauvelt and Deihl.

■ Prior to January 1, 1995, when Public Act 88—538 became effective (Pub. Act 88—538, § 5, eff. January 1, 1995 (1994 Ill. Laws 154, 157), amending 735 ILCS 5/13—204 (West 1992)) (hereinafter amendment), section 13—204 of the Code had no subsections and stated:

> "Contribution among tortfeasors. No action for contribution among joint tortfeasors shall be commenced with respect to any payment made in excess of a party's pro rata share more than 2 years after the party seeking contribution has made such payment towards discharge of his or her liability." 735 ILCS 5/13—204 (West 1992).

Under the foregoing amendment, section 13—204(c) was created, which stated:

> "The applicable limitations period contained in subsection (a) or (b) shall apply to all actions for *contribution* or *indemnity* and *shall preempt, as to contribution and indemnity actions only, all other statutes of limitation or repose*, but only to the extent that the claimant in an underlying action could have timely sued the party from whom contribution or indemnity is sought at the time such claimant filed the underlying action, or in instances where no underlying action has been filed, the payment in discharge of the obligation of the party seeking contribution or indemnity is made before any such underlying action would have been barred by lapse of time." (Emphasis added.) 735 ILCS 5/13—204(c) (West 1996).

The basic limitations period of section 13—204 is set forth in subsection (b) thereof, which now states:

> "In instances where an underlying action has been filed by a claimant, no action for contribution or indemnity may be commenced more than 2 years after the party seeking contribution or indemnity has been served with process in the underlying action

or more than 2 years from the time the party, or his or her privy, knew or should reasonably have known of an act or omission giving rise to the action for contribution or indemnity, whichever period expires later." 735 ILCS 5/13—204(b) (West 1996).

Here, Blauvelt was served with process in June 1992 and did not file the instant third-party action until November 1996, well over two years later. The foregoing legislation became effective January 1, 1995, at which time more than two years had elapsed since Blauvelt had been served with process and, at the time of service, Blauvelt clearly knew of the activities of Deihl. However, by the foregoing amendment, subsection (d) of section 13—204 was created and has since stated:

"The provisions of this [section, as amended by Public Act 88—538, § 5, eff. January 1, 1995 (1994 Ill. Laws 154, 157),] shall be *applied retroactively* when substantively applicable, including all pending actions without regard to when the cause of action accrued; *provided, however, that this amendatory Act of 1994 shall not operate to affect statutory limitations or repose rights of any party which have fully vested prior to its effective date.*" (Emphasis added.) 735 ILCS 5/13—204(d) (West 1996).

Thus, section 13—204 purports to have retroactive effect, but it does "not operate to affect statutory limitations or repose rights of any party which have fully vested prior to its effective date." 735 ILCS 5/13—204(d) (West 1996).

■ Deihl recognizes that ordinarily when, as here, retroactive application of new legislation in regard to time limits for bringing actions completely cuts off or unreasonably restricts the opportunity for a person or entity to bring an action, that person or entity has a reasonable time to bring the action. *Mega v. Holy Cross Hospital*, 111 Ill. 2d 416, 420-21, 490 N.E.2d 665, 667 (1986); *Phillips Products Co. v. Industrial Comm'n*, 94 Ill. 2d 200, 203-04, 446 N.E.2d 234, 236 (1983). Here, if we disregard the provision of the new legislation regarding rights of limitations or repose "which have fully vested," the third-party complaint was tardily filed because Blauvelt had a reasonable time after the effective date of the amendment to file the third-party complaint but did not do so. *Moore v. Jackson Park Hospital*, 95 Ill. 2d 223, 237, 447 N.E.2d 408, 414 (1983); *Clark v. St. John's Hospital*, 128 Ill. App. 3d 989, 992, 471 N.E.2d 912, 914 (1984). Blauvelt had knowledge of his cause of action in June 1992, well before the January 1, 1995, effective date of the applicable provisions of section 13—204, but did not file his claim against Deihl until December 27, 1996, some 23 months after the effective date of the amendment to section 13—204.

However, we cannot disregard the provision of section 13—204(d) that states the retroactive application of the amended provisions of section 13—204 "shall not operate to affect statutory limitations or repose rights *of any party* which have fully vested prior to [the effective date of the amendment]." (Emphasis added.) 735 ILCS 5/13—204(d) (West 1996). Ordinarily, limitations or repose rights are those exercised by a party defendant to a claim to protect that party from a stale claim, but section 13—204(d) refers to those rights of "any party," which would include those possessing a cause of action, as well as those who seek to defend against an action. Moreover, the language concerning the protection of vested rights would have little significance if it referred only to defendants because the amendment cuts down the time plaintiffs have for bringing suits against defendants and, therefore, could not injure the rights of defendants.

No case has been called to our attention that holds that a party having a cause of action has a vested right in that cause of action. In *First of America Trust Co. v. Armstead,* 171 Ill. 2d 282, 291, 664 N.E.2d 36, 40 (1996), the court described a vested right as a "complete and unconditional demand or exemption that may be equated with a property interest." The undisputed vested rights of parties from suits after statutory periods of limitation have expired have been equated with the rights of parties to bring suits. *Wilson v. All-Steel, Inc.,* 87 Ill. 2d 28, 41, 428 N.E.2d 489, 494 (1981); *Board of Education of Normal School District v. Blodgett,* 155 Ill. 441, 449, 40 N.E. 1025, 1027 (1895). In a dissent in a case before the Supreme Court of Illinois, the statement was made that an accrued cause of action is a vested right. *Sanelli v. Glenview State Bank,* 108 Ill. 2d 1, 46, 483 N.E.2d 226, 247 (1985) (Simon, J., dissenting, joined by Clark, C.J., and Ward, J.).

■ In view of the foregoing language from authoritative opinions and the express reference in section 13—204(d) to the vested "rights of any party," we conclude the General Assembly sought to protect the rights of parties seeking contribution under the time limits previously in existence if the cause of action for contribution accrued prior to the amendment. We are troubled by the fact that our interpretation renders meaningless the provision of section 13—204(d) indicating that subsection applied retroactively. Retroactive application of new legislation concerning limitations and repose and retention of vested rights under the prior legislation involving the same matters are inherently inconsistent.

In any event, statutes are presumed to have only a prospective application, and the presumption is overcome only by clear language overcoming the presumption. *First of America Bank, Rockford, N.A.*

*v. Netsch*, 166 Ill. 2d 165, 182, 651 N.E.2d 1105, 1112-13 (1995); *People v. Fiorini*, 143 Ill. 2d 318, 333, 574 N.E.2d 612, 617 (1991). Here, section 13—204(d) clearly states the section is to have retroactive effect, but the required clarity is destroyed by the language that subsection (d) "shall not operate to affect statutory limitations or repose rights of any party." 735 ILCS 5/13—204(d) (West 1996). Section 13—204 did not justify the dismissal of Blauvelt's third-party complaint.

■ At all times relevant, section 13—214.3(b) of the Code has stated, in pertinent part:

> "An action for damages based on tort, contract, or otherwise (i) against an attorney arising out of an act or omission in the performance of professional services *** must be commenced within 2 years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought." 735 ILCS 5/13—214.3(b) (West 1996).

Deihl maintains the third-party complaint is an action against him "arising out of an act or omission in [his] performance of professional services," in common jargon, an act of malpractice. As we have indicated, the third-party complaint does not set forth a failure of Deihl's professional duty to Blauvelt but rather conduct on Deihl's part whereby he shared culpability for the injuries to plaintiffs. Blauvelt's third-party complaint was not a complaint alleging a breach of Deihl's duty to him and was not an action for legal malpractice. Section 13—214.3(b) of the Code did not determine the time limits for bringing the third-party complaint.

■ Finally, we come to Deihl's contention that the issue of whether Blauvelt's failure to obtain the circuit court's permission before filing his third-party complaint deprived that court of jurisdiction to hear that complaint. Section 2—406(b) of the Code states, *inter alia*:

> "*Within the time for filing his or her answer or thereafter by leave of court*, a defendant may by third-party complaint bring in as a defendant a person not a party to the action who is or may be liable to him or her for all or part of the plaintiff's claim against him or her." (Emphasis added.) 735 ILCS 5/2—406(b) (West 1996).

Here, the third-party complaint was filed long after Blauvelt was required to answer, and the record does not indicate that Blauvelt ever received permission of the court to file the pleading. However, Deihl never objected to the lack of court permission in the circuit court and raises the issue for the first time on appeal.

Deihl asserts that the lack of permission to file the third-party complaint deprived the circuit court of jurisdiction of that complaint and rendered it void, requiring us to disregard it and dismiss the ap-

peal even though the issue is raised for the first time on appeal. Deihl cites first district cases of *Greene v. Helis*, 252 Ill. App. 3d 957, 625 N.E.2d 162 (1993), and *Callaghan Paving, Inc. v. Keeneyville Construction Co.*, 197 Ill. App. 3d 937, 557 N.E.2d 228 (1990), and the fifth district case of *First Robinson Savings & Loan v. Ledo Construction Co.*, 210 Ill. App. 3d 889, 569 N.E.2d 304 (1991).

*Callaghan* is most directly on point. There, a plaintiff was granted leave of court to file an amended complaint and did so, but, without obtaining authority, also added an additional defendant. The additional defendant then appeared and moved to dismiss the complaint against it as being tardy. The motion was allowed and the plaintiff appealed. There, as here, for the first time on appeal the issue was raised that the filing of the amended complaint was a void act because it was done without statutory authority and constituted an error that was "jurisdictional." The appellate court held the addition of the party was a nullity and affirmed the order dismissing the complaint as to that party. *Callaghan*, 197 Ill. App. 3d at 939-40, 557 N.E.2d at 229-30. In *Greene*, a complaint was filed against a defendant who could not be found to serve with process and then died. The plaintiff, without leave of court, filed an amended complaint against the personal representative of the estate. The appellate court held the amended complaint was a nullity and could not be the basis for a tolling of any statutory period of limitation. *Greene*, 252 Ill. App. 3d at 960, 625 N.E.2d at 165. In *First Robinson* (210 Ill. App. 3d at 892-93, 569 N.E.2d at 307), a counterclaim filed with the court's permission but without notice to the plaintiff was held to be a nullity to which a subsequently filed amended counterclaim could not relate back in order to overcome a statute of limitations defense.

■ Neither this court nor the Supreme Court of Illinois has ever held that obtaining leave of court to bring in an additional party is a necessary requirement for the circuit court to have jurisdiction over the proceeding against that additional party. No doubt many reasons support the statutory requirement to obtain leave. However, here, any party prejudiced by the joinder, including the party joined, could have objected in the trial court but did not do so. Placing jurisdictional significance to the leave requirement here would merely result in a technical windfall to the third-party defendant who did not object to the lack of leave of court until appeal. Moreover, we conclude that treating obtaining of leave as an element of jurisdiction is contrary to the most recent theories of circuit court jurisdiction.

We first note that the instant proceeding seeks relief pursuant to actions recognized in common law. No statutory relief is sought. In the case of *In re M.M.*, 156 Ill. 2d 53, 66-67, 619 N.E.2d 702, 710

(1993), the supreme court held the circuit court exceeded its authority in a proceeding under the Juvenile Court Act of 1987 (Ill. Rev. Stat. 1989, ch. 37, par. 801—1 *et seq.*) and the Adoption Act (Ill. Rev. Stat. 1989, ch. 40, par. 1501 *et seq.*) by conditioning the authority of an appointed guardian's power to consent to the adoption of the ward upon agreement by the adopting parents to permit the adopted child to continue contact with the minor's biological family. The court reasoned the circuit court was proceeding under the provisions of the two described acts and, unlike when a common law proceeding was involved, had jurisdiction to proceed only in accordance with the provisions of the legislation. Thus, the fact that here the action involved is one arising from the common law tends to negate any errors in the failure to obtain the court's permission to file the third-party complaint from depriving the circuit court of jurisdiction over the third-party complaint.

In *M.M.*, then Chief Justice Miller filed a concurrence, joined by Justice Bilandic, in which he stated:

"I concur in the court's judgment, and in its determination that a circuit judge is not authorized to impose special conditions on a court-appointed guardian's power to consent to the adoption of a minor.

* * *

Because the circuit courts now are courts of general jurisdiction and, except in the review of administrative action, derive their jurisdiction from the constitution, not from the legislature, we should not attempt to breathe new life into terms that can have no application here. '[T]he bench and bar are by nature traditionalists and *** with them old notions die hard. No longer do we seek statutory justification for the exercise of jurisdiction; rather the inquiry must be whether there exists a justiciable controversy, and if so, are there any statutory conditions precedent to judicial intervention.' *In re Estate of Mears*, *** 110 Ill. App. 3d 1133, 1138[, 443 N.E.2d 289, 293 (1982)].

That a circuit court's jurisdiction over a certain matter is conferred by the constitution rather than by the legislature does not mean, however, that a court is free to act in ways inconsistent with controlling statutory law, as the appellants would have it. Clearly, the constitutional source of a circuit court's jurisdiction does not carry with it a license to disregard the language of a statute. As the majority explains, the statutory provisions applicable here do not support the special conditions imposed below. I concur in that reasoning, and I join the court's judgment." *M.M.*, 156 Ill. 2d at 74-75, 619 N.E.2d at 714 (Miller, C.J., concurring, joined by Bilandic, J.).

In the case of *In re Lawrence M.*, 172 Ill. 2d 523, 670 N.E.2d 710 (1996), the supreme court was faced with the problem of whether a circuit court could require the Illinois Department of Children and Family Services (DCFS) to provide and pay for inpatient drug-treatment services for a mother whose children were removed from her custody as a result of drug-related neglect. In answering the question of whether the circuit court ordering DCFS to make such payment exceeded the circuit court's jurisdiction, the majority cited with approval the special concurrence of then Chief Justice Miller in *M.M.* and stated that because circuit court jurisdiction is conferred by the constitution and not by statute, except as to administrative review, "circuit courts no longer seek statutory justification for the exercise of jurisdiction." *Lawrence M.*, 172 Ill. 2d at 529, 670 N.E.2d at 714. (Justice Miller dissented in *Lawrence M.* on grounds not involving the foregoing reasoning.)

In *Mears*, the circuit court admitted the will of a decedent to probate. An heir and legatee filed a timely petition to contest the will but failed to name the appointed executor under the will as a party, as required by statute (Ill. Rev. Stat. 1979, ch. 110¹/₂, par. 8—1(a)). The circuit court allowed a motion to dismiss the complaint for lack of jurisdiction for failure to join the executor. This court reversed and remanded with directions to allow the petitioner in the will contest to join the executor. *Mears*, 110 Ill. App. 3d at 1140, 443 N.E.2d at 294. The opinion stated that before "1964[, the effective date of the Judicial Article of 1962,] a will contest was a creature of statute in this State and hence jurisdiction was dependent upon strict compliance with the statute." *Mears*, 110 Ill. App. 3d at 1138, 443 N.E.2d at 293.

In *In re Marriage of Bussey*, 128 Ill. App. 3d 730, 471 N.E.2d 563 (1984), *aff'd*, 108 Ill. 2d 286, 483 N.E.2d 1229 (1985), a former husband filed a petition in the circuit court of Champaign County seeking to modify an Indiana divorce decree to give him custody of the parties' children. The former wife cross-petitioned for more child support. After a hearing, the circuit court denied the change of custody but granted more child support. The former husband appealed, claiming for the first time that the circuit court lacked jurisdiction because of deficiencies in the way the Indiana decree was placed before the court. The original petition contained a copy of the Indiana decree, but no notice by the clerk of the Indiana court was sent to the clerk of the Illinois court as required by Illinois statute (Ill. Rev. Stat. 1983, ch. 40, par. 511(b)). This court held that, under *Mears*, this type of statutory requirement was no longer necessary for the circuit court of Champaign County to have jurisdiction. *Bussey*, 128 Ill. App.

3d at 733-34, 471 N.E.2d at 565-66. We noted that any procedural failure that occurred could have been corrected if raised in the circuit court, and the supreme court deemed this significant in its opinion affirming. *Bussey*, 108 Ill. 2d at 294-95, 483 N.E.2d at 1233.

In Justice Miller's concurrence in *M.M.*, he stated: "[t]he sources and scope of [jurisdiction described in prior cases] *changed dramatically* with the 1964 amendments to the judicial article of the former constitution." (Emphasis added.) *M.M.*, 156 Ill. 2d at 74, 619 N.E.2d at 714 (Miller, C.J., concurring, joined by Bilandic, J.). In *Mears* (110 Ill. App. 3d at 1136-37, 443 N.E.2d at 292), the foregoing change was described as a "revolution." The difference between a condition being a statutory justification for jurisdiction and a statutory condition precedent to the exercise of jurisdiction is not merely a play on words. As this court indicated in *Bussey*, strict statutory compliance to statutory requirements is no longer necessary for circuit court jurisdiction. *Bussey*, 128 Ill. App. 3d at 733, 471 N.E.2d at 566.

Upholding the jurisdiction of the circuit court here will not give a license to defendants to file third-party complaints without permission when required, as that can be prevented by objection by opponents or on the court's own motion in the circuit court, but that was not done here. These proceedings were not brought pursuant to substantive statutory right. Thus, the circuit court did not lack jurisdiction to proceed on the third-party complaint.

As we have concluded that the circuit court did not lack jurisdiction to proceed upon the third-party complaint and the third-party complaint was not untimely under the cited statutory provisions, we reverse the judgment dismissing the third-party complaint and remand to the circuit court of Sangamon County for further proceedings.

Reversed and remanded.

KNECHT and STEIGMANN, JJ., concur.