**BULLER TRUCKING CO.,**
**Plaintiff/Counter–**
**Defendant,**

v.

**OWNER OPERATOR INDEPENDENT DRIVER RISK RETENTION GROUP, INC., Defendant/Counterclaimant.**

**No. 05–CV–00165–MJR.**

United States District Court,
S.D. Illinois.

Nov. 3, 2006.

Christopher T. Kolker, Charles Kolker Law Office, Belleville, IL, Elizabeth V. Heller, Goldenberg, Heller, et al., Edwardsville, IL, for Plaintiff/Counter-Defendant.

David A. Cohen, Randall Herrick–Stare, Cullen Law Firm, Washington, DC, Michael A. Lawder, Anderson & Gilbert, St. Louis, MO, for Defendant/Counterclaimant.

## MEMORANDUM and ORDER

REAGAN, District Judge.

This matter comes before the Court on the mandate of the United States Court of Appeals for the Seventh Circuit directing the Court to determine whether federal subject matter jurisdiction is proper in this case pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, Pub.L. No. 109–2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.) ("CAFA"). The Court concludes that it is not and, therefore, this action is **REMANDED** to the Circuit Court of the Twentieth Judicial Circuit, St. Clair County, Illinois, for lack of subject matter jurisdiction.

## INTRODUCTION

This case arises from an incident on July 29, 2003, in which the refrigeration system in a truck owned and operated by Plaintiff Buller Trucking Company ("BTC") failed, causing a $35,000 loss to the truck's perishable cargo. *See* Doc. 24 ¶¶ 18–23. BTC's claim on its cargo loss insurance with Defendant Owner Operator Independent Driver Risk Retention Group, Inc., ("Risk Retention Group") was denied on the grounds that the loss was due to BTC's failure to maintain an adequate supply of refrigerant in the truck's cooling system, so that the loss was excluded from coverage under the terms of a "Refrigeration Breakdown Endorsement" in BTC's cargo loss policy. *See id.* ¶¶ 12–13, ¶¶ 24–27. On January 7, 2004, BTC filed this action against Risk Retention Group in the St. Clair County Circuit Court, alleging

breach of contract, vexatious delay in paying insurance claims, consumer fraud, and common-law fraud in connection with Risk Retention Group's refusal to pay BTC's claim on its cargo loss insurance. *See* Doc. 65, Ex. A. On February 7, 2005, BTC filed a motion to amend its complaint to seek certification of three nationwide classes as to BTC's claims for breach of contract, vexatious delay in paying insurance claims, and consumer fraud. *See* Doc. 24 ¶¶ 37–46, ¶¶ 48–76. On February 18, 2005, the effective date of CAFA, the St. Clair County court granted BTC's motion to amend. *See* Doc. 13, Ex. D.

On March 7, 2005, Risk Retention Group removed this case to this Court, asserting federal subject matter jurisdiction under 28 U.S.C. § 1332 as amended by CAFA. *See* Doc. 1. Although the case originally was assigned to United States District Judge David R. Herndon, it later was transferred to the docket of the undersigned District Judge. *See* Doc. 33.[1] On September 29, 2005, the Court remanded this case to state court for lack of subject matter jurisdiction. *See* Doc. 53. On petition for leave to appeal from the Court's order of remand pursuant to 28 U.S.C. § 1453(c), the Seventh Circuit Court of Appeals vacated the Court's remand order. *See* Doc. 57. The Seventh Circuit directed the Court to determine whether the St. Clair County court's action in granting BTC leave to amend its complaint to assert class-action allegations on the effective date of CAFA operated to commence this action on the effective date of the statute so as to make the case removable to federal court under CAFA. *See id.* Ac-

cordingly, after issuance of the Seventh Circuit's mandate, the Court directed the parties to submit briefs on the issue of whether federal subject matter jurisdiction is proper in this case under CAFA. *See* Doc. 58. The issue of subject matter jurisdiction under CAFA has been fully briefed by the parties, *see* Doc. 62; Doc. 63; Doc. 65, and the Court now is prepared to rule.

## DISCUSSION

### A. Legal Standard

 Removal of actions from state court to federal court is governed by 28 U.S.C. § 1441, which provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). In other words, "[a] defendant may remove a case to federal court only if the federal district court would have original subject matter jurisdiction over the action." *Disher v. Citigroup Global Mkts., Inc.,* 419 F.3d 649, 653 (7th Cir.2005), *vacated on other grounds,* —— U.S. ——, 126 S.Ct. 2964, 165 L.Ed.2d 947 (2006). The defendant has the burden of establishing that an action is removable, and doubts concerning removal must be resolved in favor of remand to the state court. *See Brill v. Countrywide Home Loans, Inc.,* 427 F.3d 446, 448 (7th Cir.2005); *Boyd v. Phoenix Funding Corp.,* 366 F.3d 524, 529 (7th Cir.2004); *Fiore v. First Am. Title Ins. Co.,* No. 05–

---

1. Judge Herndon transferred this case to the undersigned District Judge because a companion case already was pending before the undersigned. The companion case, *Buller v. Owner Operator Independent Driver Risk Retention Group, Inc.,* which was docketed in the St. Clair County circuit court as case number 05–L–31, was removed to this Court by Risk Retention Group on the same day Risk Retention Group removed this case and docketed in this Court as case number 05–164. Pursuant to the Court's order entered July 27, 2006, case number 05–164 was voluntarily dismissed without prejudice.

CV–474–DRH, 2005 WL 3434074, at *2 (S.D.Ill.Dec.13, 2005). *Cf. Prime Care of N.E. Kan., LLC v. Blue Cross & Blue Shield of Kan. City,* Civil Action No. 05–2227–KHV, 2006 WL 2734469, at *1 (D.Kan. Sept.25, 2006); *Beegal v. Park W. Gallery,* Civil No. 05–5625(RBK), 2006 WL 2645123, at *1–2 (D.N.J. Sept.14, 2006).

**B. Diversity Jurisdiction under CAFA**

■ Under CAFA, federal courts have jurisdiction in diversity, with exceptions not at issue here, *see* 28 U.S.C. § 1332(d)(3), (d)(4), (d)(5), (d)(9), over class actions with one hundred or more class members, *see* 28 U.S.C. § 1332(d)(5)(B), in which any member of the plaintiff class is a citizen of a state different from that of any defendant, or any member of a plaintiff class or any defendant is a foreign state or a citizen or subject of a foreign state. *See* 28 U.S.C. § 1332(d)(2). In a class action in which CAFA's requirement of minimal diversity is met, a federal court has jurisdiction if, after aggregating class members' claims, more than $5 million, exclusive of interest and costs, is in controversy. *See* 28 U.S.C. § 1332(d)(2), (d)(6). Class actions filed in state court that satisfy the jurisdictional prerequisites of CAFA are subject to removal to federal court. *See* 28 U.S.C. § 1453(a), (b).

■ "The CAFA is not retroactive and therefore only applies to class actions which are 'commenced on or after the date of enactment' of the statute, February 18, 2005." *Schillinger v. 360Networks USA, Inc.,* Civil No. 06–138–GPM, 2006 WL 1388876, at *2 (S.D.Ill. May 18, 2006) (quoting Pub.L. 109–2, § 9, 119 Stat. 4). In general a class action is commenced for purposes of removal under CAFA on the date it originally was filed in state court. *See Knudsen v. Liberty Mut. Ins. Co.,* 411 F.3d 805, 806 (7th Cir.2005); *Alsup v. 3-*

*Day Blinds,* No. Civ. 05–287–GPM, 2005 WL 2094745, at *2–3 (S.D.Ill. Aug.25, 2005). In some instances, however, an amendment to a complaint may commence (or perhaps more correctly, recommence) a class action after the effective date of CAFA so as to make the action removable under the statute. The general test of whether an amendment of a class-action complaint after the effective date of CAFA "commences" the action so as to permit removal under the statute is whether the amendment "relates back" to the filing date of the original complaint: if it does, then the case is not removable, but if it does not, the case is subject to removal under CAFA. *See Knudsen,* 411 F.3d at 807; *Schillinger,* 2006 WL 1388876, at *3; *In re General Motors Corp. Dex–Cool Prods. Liab. Litig.,* No. CIVMDL–03–1562GPM, Civ. 05–10007–GPM., 2006 WL 644793, at *2 (S.D.Ill. Mar.9, 2006). In *Knudsen* the Seventh Circuit explained that "a new claim for relief (a new 'cause of action' in state practice), the addition of a new defendant, or any other step sufficiently distinct that courts would treat it as independent for limitations purposes, could well commence a new piece of litigation for federal purposes even if it bears an old docket number for state purposes." 411 F.3d at 807.

In this case, as discussed, the Seventh Circuit has directed the Court to decide whether the St. Clair County court's grant of BTC's request for leave to amend its complaint to assert class-action allegations commenced this action on the effective date of CAFA so as to make the case removable under the statute. The Court finds *Schillinger v. Union Pacific Railroad Co.,* 425 F.3d 330 (7th Cir.2005), instructive on this question. In *Schillinger* landowners filed a class action in 2002 against two railroad companies, Union Pacific Corporation ("UPC") and Union Pa-

cific Railroad Company ("UPRR"), in state court. *See* 425 F.3d at 331–32. The plaintiffs alleged that UPC and UPRR held easements on their property and the property of the proposed class, and that the defendants had trespassed on that property and been unjustly enriched when they leased space in their easements to telecommunications companies for the installation of fiber-optic cables. *See id.* The case was removed to federal court, then remanded to state court, whereupon the plaintiffs voluntarily dismissed UPC from the suit. *See id.* at 332. In 2003 the plaintiffs requested leave to file an amended complaint that appeared once more to join UPC as a party defendant and expanded the definition of the proposed class. *See id.* Leave to file the amended complaint was granted in May 2005, whereupon UPC and UPRR sought removal of the case under CAFA. *See id.* at 332–33.

The district court held that the joinder of UPC did not commence the action after the effective date of CAFA because the record established that the joinder was inadvertent and merely the product of a drafting error by the plaintiffs' attorneys. *See Schillinger,* 425 F.3d at 333. On appeal, the Seventh Circuit affirmed remand:

> [T]he district court found, in effect, that UPC was never really brought back into the case, when it concluded that the inclusion of UPC as a defendant in the amended complaint was a scrivener's error. We review the district court's finding with deference, ... and there is ample support in the record for the district court's determination. The Schillingers did not discuss the addition of UPC in their motion to amend or supporting memorandum, nor did they serve UPC with a copy of either the motion to amend or the filed amended complaint. Most importantly, plaintiffs' counsel filed an affidavit in which he explained that his staff used the original complaint as a word processing template in drafting the amended complaint and failed to notice that this resulted in the incorporation of the old caption and introductory allegations into the amended complaint. The district court acted within its discretion in finding that UPC's inclusion in the amended complaint was a clerical error, that plaintiffs had no intention of bringing UPC back into the litigation, and that UPC was in fact not a new party to the suit.

*See id.* at 333. The court concluded, "[t]his case should not come to federal court if the only ground for jurisdiction is a clerical error, however careless." *Id.* The Seventh Circuit also rejected the argument that the expanded class definition in the amended complaint commenced the action after the effective date of CAFA:

> We acknowledge that the Schillingers' expansion of the class (if successful) may have great[ ] repercussions for UPRR .... If plaintiffs' nationwide class is eventually certified, UPRR will have more rights-of-way to research and more state laws under which to analyze various claims than if it was facing only a class of Illinois plaintiffs. But ... the potential for a larger amount of legal research and discovery in and of itself is not a significant enough step to create new litigation.

*Id.* at 334.

Importantly, as an alternate basis for the holding that jurisdiction did not exist under CAFA, the *Schillinger* court invoked the traditional rule that, for purposes of a statute of limitations, an amended complaint is deemed filed at the time a request for leave to amend is filed:

> Illinois law governs the statute of limitations in the trespass action. In determining whether an amended complaint

meets the statute-of-limitations deadline, Illinois courts look to the date plaintiffs filed their motion to amend the complaint rather than the date the trial court grants the motion and files in the pleading. The logic underlying this practice is that defendants are on notice of the amendment when the motion is filed and it would be unfair to plaintiffs if a trial court waited months or years to rule.

425 F.3d at 334 (citations omitted). The Seventh Circuit concluded that because the plaintiffs sought leave to amend before the effective date of CAFA, the case was commenced before CAFA, notwithstanding the fact that the state court did not grant leave to amend until after the enactment of the statute. "[T]he operative events here all occurred before CAFA's effective date, regardless of the fact that the formal acceptance of the amended pleading took place after CAFA was available. If so, then this is an independent reason why UPRR's current effort to remove cannot succeed." *Id.* at 335.

The *Schillinger* court left open the question of whether state law or federal law should govern the question of whether a request for leave to amend a complaint "commences" an action for purposes of CAFA:

> It is not clear whether this state practice would govern federal procedure in the circumstances presented here. On the one hand, in cases for which state law provides the rule of decision, federal courts apply state statutes of limitations, including qualifications on those statutes .... On the other hand, federal courts have their own rules governing when an action is "commenced" for federal procedural purposes .... If Illinois regarded the new claims as "commenced" against UPRR back in 2003, then UPRR had notice of their existence at that time for

purposes of the ongoing state court action. The district court's earlier decision that there was no jurisdiction had nothing to do with the existence (or nonexistence) of UPC as a party, and thus the amendment would not have prompted a new removal effort under the normal rules of 28 U.S.C. § 1446.

\* \* \* \* \* \*

We recognize, however, that this is a complex question. CAFA may make state rules about statutes of limitations irrelevant to the type of commencement that is necessary for federal removal. CAFA permits a class action to be removed "in accordance with [28 U.S.C.] section 1446 ...." It defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure ...." 28 U.S.C. § 1332(d)(1)(B). The date of filing, in the context of an amended pleading, may refer to the date when the court accepts a proposed amendment, not the date when the amendment is proffered. If, therefore, contrary to our finding above, the amendment here was enough to make this a new case for CAFA purposes, then UPRR may have been entitled to rely on the date when the amendment was finally accepted by the state court. We prefer to save this complex issue for another day, when the choice of law and interpretation of federal law will govern the outcome.

425 F.3d at 335. In light of *Schillinger,* the Court must decide two questions: whether the issue of when this action was commenced as a class action for purposes of removal under CAFA is controlled by federal law or state law, and whether this action was commenced by BTC's request for leave to amend its complaint to assert class-action allegations or by the state

court's grant of BTC's request for leave to amend.

■ The Court concludes that the issue of when this action was commenced as a class action for purposes of removal under CAFA is governed by state law, not federal law. As the *Schillinger* court recognized, "in cases for which state law provides the rule of decision, federal courts apply state statutes of limitations, including qualifications on those statutes." 425 F.3d at 334. *Cf. Pace v. DiGuglielmo*, 544 U.S. 408, 415, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005) (looking to state law to determine when a pleading has been "properly filed" for purposes of a federal statute of limitations); *Walker v. Armco Steel Corp.*, 446 U.S. 740, 751, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980) (state law determines when an action commences for statute of limitations purposes); *Herb v. Pitcairn*, 324 U.S. 117, 120, 65 S.Ct. 459, 89 L.Ed. 789 (1945) ("Whether any case is pending in the Illinois courts is a question to be determined by Illinois law[.]"); *Pacific Employers Ins. Co. v. Sav–a–Lot of Winchester*, 291 F.3d 392, 400 (6th Cir.2002) (in light of the rule that a forum state's relation-back law controls the timeliness of amended pleadings filed in state court before removal, holding that "it is the version of the relation-back doctrine embodied in the Kentucky Rules [of Civil Procedure], and not the version embodied in the Federal Rules, that governed the consequences of the filing of the amended complaint" in state court before removal); *Anderson v. Allstate Ins. Co.*, 630 F.2d 677, 682 (9th Cir.1980) (state law governed whether an amended complaint related back "because the relevant amendments and service of process preceded removal to federal court.").

"In federal actions based on diversity of citizenship jurisdiction, federal courts apply state law to decide when a lawsuit was commenced for certain purposes, such as computing limitations periods." 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1052 (3d ed. 1998 & Supp.2006) (collecting cases). This rule is based on the familiar principles enunciated in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), that federal courts lack constitutional power to fashion broad swathes of federal common law and that, when a federal court sitting in diversity acts in effect as a state court, its application of state law should be controlled by authoritative interpretations of that law by the highest court of that state. *See Walker*, 446 U.S. at 744–45, 100 S.Ct. 1978. *See also In re Rhone–Poulenc Rorer Inc.*, 51 F.3d 1293, 1300 (7th Cir.1995).

The Seventh Circuit has cautioned that CAFA is to be interpreted in a manner consistent with pre-CAFA federal law and is presumed not to alter traditional rules governing removal, save to the extent it does so explicitly. *See Brill*, 427 F.3d at 448. *See also Frazier v. Pioneer Ams. LLC*, 455 F.3d 542, 547 (5th Cir.2006) (noting that CAFA evinces "an intent to change nothing about the statutory meaning of 'citizen'" for purposes of diversity jurisdiction); *In re General Motors Corp. Dex–Cool*, No. Civ. MDL–03–1562–GPM, Civ. 05–10008–GPM, 2006 WL 2818773, at *5 (S.D.Ill. Sept.27, 2006) (CAFA must be construed consistently with the rule that a notice of removal may not be amended more than thirty days after the time for removal to include new allegations of federal jurisdiction not asserted in the original notice). Congress is assumed to act with the knowledge of existing law and interpretations when it passes new legislation. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 792, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (noting the "presumption that Congress was aware of [prior] judicial interpretations [of a statute] and,

in effect, adopted them"); *Chambers v. NASCO, Inc.,* 501 U.S. 32, 47, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) ("[W]e do not lightly assume that Congress has intended to depart from established principles" created through judicial decisions); *Miles v. Apex Marine Corp.,* 498 U.S. 19, 32, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990) ("We assume that Congress is aware of existing law when it passes legislation."); *United States v. Martin,* 128 F.3d 1188, 1192 (7th Cir.1997) (in construing amendments to a statute, a court presumes that Congress was aware of judicial interpretations of the statute). Similarly, in interpreting new legislation enacted by Congress, "it is not only appropriate but also realistic to presume that Congress was thoroughly familiar with [Supreme Court] precedents ... and that it expect[s] its enactment[s] to be interpreted in conformity with them." *North Star Steel Co. v. Thomas,* 515 U.S. 29, 34, 115 S.Ct. 1927, 132 L.Ed.2d 27 (1995) (quoting *Cannon v. University of Chicago,* 441 U.S. 677, 699, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979)). *See also Martin v. Luther,* 689 F.2d 109, 115 (7th Cir.1982) ("Congress is presumed to know the law."). *Cf. Garcia v. Department of Homeland Sec.,* 437 F.3d 1322, 1336 (Fed. Cir.2006) ("Congress is presumed to enact legislation with knowledge of the law and a newly-enacted statute is presumed to be harmonious with existing law and judicial concepts.") (collecting cases); *Board of County Comm'rs v. EEOC,* 405 F.3d 840, 845 (10th Cir.2005) ("We assume that Congress knows the law and legislates in light of federal court precedent."); *United States v. LeCoe,* 936 F.2d 398, 403 (9th Cir.1991) ("Congress is, of course, presumed to know existing law pertinent to any new legislation it enacts.").

The Court discerns nothing in the text of CAFA to suggest that it is intended to displace the traditional *Erie* rule mandating the use of state law with respect to statutes of limitations and commencement of actions. To the contrary, federal courts have been unanimous in applying state law to determine commencement in CAFA cases. *See Phillips v. Ford Motor Co.,* 435 F.3d 785, 787–88 (7th Cir.2006) (whether an amendment of a complaint relates back or not for purposes of commencement under CAFA is governed by state law); *Pfizer, Inc. v. Lott,* 417 F.3d 725, 726 (7th Cir.2005) (commencement of an action for CAFA purposes is determined by state law); *Schillinger,* 2006 WL 1388876, at *3 (noting that "the weight of authority" tests relation back for CAFA purposes by reference to state law); *In re General Motors Corp. Dex–Cool Prods. Liab. Litig.,* 2006 WL 644793, at *2 (testing relation back under Massachusetts law). *Cf. Braud v. Transport Serv. Co. of Ill.,* 445 F.3d 801, 803–04 (5th Cir.2006); *Plubell v. Merck & Co.,* 434 F.3d 1070, 1071–74 (8th Cir.2006); *Bush v. Cheaptickets, Inc.,* 425 F.3d 683, 687–88 (9th Cir.2005); *Natale v. Pfizer, Inc.,* 424 F.3d 43, 44 (1st Cir.2005); *Pritchett v. Office Depot, Inc.,* 420 F.3d 1090, 1094 (10th Cir.2005); *Cuesta v. Ford Motor Co.,* No. CIV–06–61–S, 2006 WL 1207608, at *3–4 (E.D.Okla. May 1, 2006); *Whitehead v. Nautilus Group, Inc.,* 428 F.Supp.2d 923, 926–28 (W.D.Ark.2006); *Adams v. Insurance Co. of N. Am.,* 426 F.Supp.2d 356, 372–77 (S.D.W.Va.2006). Therefore, the Court concludes that Illinois law controls the issue of when this action was commenced for purposes of removal under CAFA.

■ The Court turns to the question of whether this action was commenced by BTC's request for leave to amend its complaint to assert class-action allegations or by the state court's grant of BTC's request for leave to amend. As the Seventh Circuit recognized in *Schillinger,* the settled rule in both federal and state court is that a complaint is deemed filed as of the time

it is submitted to a court together with a request for leave to file the amended pleading. "As a party has no control over when a court renders its decision regarding the proposed amended complaint, the submission of a motion for leave to amend, properly accompanied by the proposed amended complaint that provides notice of the substance of those amendments, tolls the statute of limitations, even though technically the amended complaint will not be filed until the court rules on the motion." *Schillinger*, 425 F.3d at 334–35 (quoting *Moore v. Indiana*, 999 F.2d 1125, 1131 (7th Cir.1993)). *See also Mayes v. AT & T Info. Sys., Inc.*, 867 F.2d 1172, 1173 (8th Cir.1989) (holding that an "amended complaint is deemed filed" by filing a motion to amend); *Rademaker v. E.D. Flynn Export Co.*, 17 F.2d 15, 17 (5th Cir.1927) (a motion to amend "stands in the place of an actual amendment."); *Massachusetts Pub. Interest Research Group v. ICI Ams. Inc.*, 777 F.Supp. 1032, 1036 (D.Mass.1991) ("[The] court deems the Amended Complaint to have been filed" on the date a motion to amend was filed); *Wallace v. Sherwin Williams Co.*, 720 F.Supp. 158, 159 (D.Kan.1988) ("[The] plaintiff's amended complaint was effectively filed when his motion for leave to file an amended complaint was filed .... To hold otherwise would punish [the] plaintiff and other similarly situated plaintiffs for the court's unavoidable delay in issuing an order granting leave to amend a complaint."); *Longo v. Pennsylvania Elec. Co.*, 618 F.Supp. 87, 89 (W.D.Pa.1985) (the filing of a motion to amend was "sufficient to meet the requirement of [Rule 3 of the Federal Rules of Civil Procedure] that 'a civil action is commenced by the filing of a complaint with the court.' "); *Derdiarian v. Futterman Corp.*, 36 F.R.D. 192, 194 (S.D.N.Y.1964) (the filing of a motion to amend "was commencement of the action" against a new defendant); *Gloster v. Penn-*

*sylvania R.R. Co.*, 214 F.Supp. 207, 208 (W.D.Pa.1963) ("To give sanction to objections to the amendment, that leave to amend must await the actual placement of a judge's signature on an order to amend, would be to lend impracticality and injustice to federal judicial processes and procedure."); *Toy v. Katz*, 192 Ariz. 73, 961 P.2d 1021, 1037 (Ariz.Ct.App.1997) (filing a motion to amend "constituted commencement of the action"); *Mauney v. Morris*, 316 N.C. 67, 340 S.E.2d 397, 400 (N.C.1986) (the filing of a motion to amend "is sufficient to start the action"); *Frazier v. East Tenn. Baptist Hosp., Inc.*, 55 S.W.3d 925, 930 (Tenn.2001) (a motion to amend "stands in the place of the actual amended complaint"); *Children's Store v. Cody Enters., Inc.*, 154 Vt. 634, 580 A.2d 1206, 1210 (Vt.1990) (an action was "commenced" by filing a motion to amend).

Consistent with the rule that an amended complaint is deemed filed when it is submitted to the court together with a motion to amend, Illinois law treats an amended complaint as effective upon the date it is filed, with or without leave of court. For example, in *Fischer v. Senior Living Properties, L.L.C.*, 329 Ill.App.3d 551, 264 Ill.Dec. 801, 771 N.E.2d 505 (Ill. App.Ct.2002), the administratrix of the estate of a patient of a senior care facility brought a wrongful death action against the facility, and later filed an amended complaint naming a hospital and a doctor as additional defendants. *See id.* at 508. The complaint was filed before the expiration of the statute of limitations, but without leave of court. *See id.* After the expiration of the statute of limitations, the plaintiff was granted leave to amend. *See id.* The new defendants joined in the amended complaint moved for dismissal of the complaint based on the running of the statute of limitations, and the trial court granted dismissal. *See id.*

On appeal, the dismissal was reversed. The Appellate Court of Illinois held that 735 ILCS 5/2–616, governing amendment of pleadings in Illinois state court, does not require leave of court to bring an amended pleading:

> Section 2–616 of the [Illinois] Code [of Civil Procedure], dealing with amendments "introducing any party who ought to have been joined," contains no specific requirement that leave of court be obtained .... The section simply provides that "[a]t any time before final judgment amendments may be *allowed* on just and reasonable terms" .... Perhaps the legislature could lay down an inflexible rule that no amendment adding parties could ever be effective without a signed order granting leave to amend. The very general language of section 2–616, however, does not establish such a rule. The provisions of section 2–616 requiring leave of court are directory, not mandatory.

*Fischer,* 264 Ill.Dec. 801, 771 N.E.2d at 509 (quoting 735 ILCS 5/2–616(a)) (emphasis in original). The court held, "We conclude that the filing of an amended complaint where the judge has not signed the order granting leave is not *per se* inadequate," particularly where there had been "substantial compliance" with the rules governing amendment of pleadings by the attorney for the plaintiff. *Id.* at 511. There was no evidence that the plaintiff's attorney had been dilatory in seeking amendment, and service had been effected promptly on the newly-joined defendants, so that they had not been prejudiced by the amendment. *See id.* Thus, the court concluded, the amended complaint was not subject to dismissal on the basis of the statute of limitations merely because it was filed without leave of court and leave to amend was not granted until after the expiration of the statute of limitations. *See id.* at 512–13.

In *Ragan v. Columbia Mut. Ins. Co.,* 183 Ill.2d 342, 233 Ill.Dec. 643, 701 N.E.2d 493 (Ill.1998), the court considered a case where the plaintiff had amended his complaint without leave of court to add a prayer for prejudgment interest. *See id.* at 495. The defendant did not object to the amendment, and prejudgment interest was awarded, but the defendant raised the argument on appeal that, because the amended complaint was filed without leave of court, the trial court had no jurisdiction over the amended complaint, citing *Greene v. Helis,* 252 Ill.App.3d 957, 192 Ill.Dec. 202, 625 N.E.2d 162 (Ill.App.Ct.1993), and other cases. *See Ragan,* 233 Ill.Dec. 643, 701 N.E.2d at 495–96, 498. The Supreme Court of Illinois distinguished *Greene* and the other cases relied upon by the defendant because they involved an amendment to add a new party, rather than a new claim, but also found the cases "unpersuasive." *Id.* at 498. The court said, "[Section 2–616 of t]he Code of Civil Procedure provides that technical defects in pleadings should not prevent the courts from doing justice between the parties." *Id.* The court concluded that because the defendant had failed to object to the amendment in the trial court, objections to the amendment on the grounds that it was filed without leave of court were waived on appeal. *See id.* at 499. *See also Ganci v. Blauvelt,* 294 Ill.App.3d 508, 228 Ill.Dec. 890, 690 N.E.2d 649, 653–56 (Ill.App.Ct. 1998) (a trial court had jurisdiction over a third-party complaint seeking contribution notwithstanding the fact that the complaint was filed without leave of court, particularly where the failure to obtain leave was not challenged in the trial court).

As *Ragan, Fischer,* and *Ganci* show, under Illinois law BTC's amended complaint was effective at the time it was filed together with BTC's motion to amend. BTC's amended complaint, although it

added class-action allegations to the complaint, added no new parties, for the simple reason that unnamed class members are not parties to class litigation. *See Schillinger*, 425 F.3d at 334 (citing *Schorsch v. Hewlett–Packard Co.*, 417 F.3d 748, 750 (7th Cir.2005)). *See also Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 287 (7th Cir.2002) (noting that, for most purposes, unnamed class members are not considered parties to a class action) (collecting cases). Although Risk Retention Group insists that this case was not commenced as a class action until February 18, 2005, when BTC was granted leave to file an amended complaint asserting class-action allegations, the Court concludes that BTC's class-action complaint was effective when it was filed on February 7, 2005. Because this case was commenced as a class action before the effective date of CAFA, the case is not removable under the statute.

## C. Diversity Jurisdiction under Pre–CAFA Law

▆ As a final matter, the Court considers briefly whether diversity jurisdiction is proper in this case under pre-CAFA federal law and concludes that it not. Class actions not subject to CAFA are removable in diversity only if there is complete diversity of citizenship between the class representatives and the defendants, that is, no class representative is a citizen of the same state as any defendant, and at least one class representative has a claim that is worth more than $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a)(1); 28 U.S.C. § 1367; *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 125 S.Ct. 2611, 2620–21, 162 L.Ed.2d 502 (2005); *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 651–52 (7th Cir.2006); *Rubel v. Pfizer Inc.*, 361 F.3d 1016, 1017 (7th Cir.2004); *Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407,

409, 410 (7th Cir.2000); *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 607 (7th Cir.1997); *Stromberg Metal Works v. Press Mech., Inc.*, 77 F.3d 928, 930–33 (7th Cir.1996); *In re General Motors Corp. Dex–Cool*, 2006 WL 2818773, at *6; *Coy Chiropractic Health Ctr., Inc. v. AIG Claim Servs., Inc.*, No. 05–CV–0221–MJR, 2005 WL 2806179, at *2 (S.D.Ill. Oct.26, 2005); *Littleton v. Shelter Ins. Co.*, No. 99–912–GPM, 2000 WL 356408, at *1 (S.D.Ill. Mar. 9, 2000). In this case, Risk Retention Group's notice of removal makes no allegation that BTC's claim is worth more than $75,000, exclusive of interest and costs, and it clearly is too late to amend the notice of removal to assert such allegations. "A notice of removal may be amended more than thirty days after the time to remove has expired 'only to set out more specifically the grounds for removal that already have been stated, albeit imperfectly, in the original notice .... Completely new grounds for removal jurisdiction may not be added and missing allegations may not be furnished, however.'" *Alsup v. 3–Day Blinds, Inc.*, 435 F.Supp.2d 838, 844 n. 2 (S.D.Ill.2006) (quoting 14C Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Joan E. Steinman, *Federal Practice & Procedure* § 3733 (3d ed. 1998 & Supp. 2005)).

▆ Furthermore, any amendment of the notice of removal to allege that BTC's claim is worth an amount in excess of $75,000, exclusive of interest and costs, would be futile, as removal on the basis of pre-CAFA diversity jurisdiction doubtless would be challenged as untimely, and correctly so. Although BTC's operative complaint in this case expressly disclaims any recovery in excess of $75,000, *see* Doc. 24 ¶ 6 & Prayer for Relief, this, of course, is not effective to waive a jurisdictionally-sufficient recovery. *See Smith v. Pfizer*,

*Inc.*, No. 05–CV–0112–MJR, 2005 WL 3618319, at *3–4 (S.D.Ill. Mar.24, 2005) (explaining that, under the law of this Circuit, only a binding stipulation or affidavit filed with a complaint is effective to waive a recovery in excess of $75,000, exclusive of interest and costs, while a mere disclaimer of a jurisdictionally-sufficient recovery for diversity purposes in the ad damnum clause of a complaint is not, because Illinois law does not limit a plaintiff's recovery to the amount of damages sought in a complaint). In fact, the allegations of BTC's operative complaint suggest that BTC's claim in this case exceeds $75,000. For example, BTC's operative complaint alleges that the company has suffered damages of $35,000 in the form of the allegedly wrongfully-denied claim on BTC's cargo loss insurance from which this action arises, *see* Doc. 24 ¶ 22–33, and has paid premiums of $14,0000 per year to Risk Retention Group since 2003, *see id.* ¶ 19, for insurance that BTC alleges is "worthless, illusory and fraudulent." *Id.* ¶ 63.

▆▆▆ The allegations of BTC's operative complaint regarding damages are identical of course to those asserted in BTC's original complaint, *see* Doc. 65, Ex. A ¶ 4, ¶ 7, ¶ 17, so that if BTC's claim is worth more than $75,000, Risk Retention Group should have been on notice of this upon service of BTC's original complaint, and waived its right to remove by not seeking removal within thirty days of service of the original complaint. "[I]t is 'a defendant's responsibility to ascertain from a reasonable and commonsense reading of the complaint whether the action is removable.'" *Fields v. Jay Henges Enters., Inc.*, Civil No. 06–323–GPM, 2006 WL 1875457, at *3 (S.D.Ill. June 30, 2006) (quoting *McCoy v. General Motors Corp.*, 226 F.Supp.2d 939, 941 (N.D.Ill.2002)) (holding that a defendant waived the right to remove in diversity by failing to remove within thirty days from the date it was served with the plaintiff's complaint, where the allegations of the complaint were sufficient to put the defendant on notice that an amount in excess of $75,000, exclusive of interest and costs, was in controversy). Correspondingly, where a defendant fails to remove within thirty days of service of a complaint that clearly puts the defendant on notice that the action is removable, the right of removal is waived. *See Wilson v. Intercollegiate (Big Ten) Conference Athletic Ass'n*, 668 F.2d 962, 965–66 (7th Cir. 1982) (holding that the time period for removal was not revived when the plaintiff added new federal claims to a complaint, because the original complaint contained allegations of constitutional violations such as to make the case removable at its inception); *Gallo v. Homelite Consumer Prods.*, 371 F.Supp.2d 943, 947–48 (N.D.Ill.2005) (holding that removal of a case was untimely, notwithstanding a plaintiff's admission that the jurisdictional amount for diversity purposes was in controversy, where the allegations of the complaint were sufficient to show the existence of a jurisdictionally-sufficient amount in controversy); *Thornton v. Signature Flight Support Corp.*, No. 04 C 5795, 2004 WL 2608291, at *2–3 (N.D.Ill. Oct.14, 2004) (holding that removal was untimely where the existence of a jurisdictionally-sufficient amount in controversy was clear from the allegations of the plaintiff's complaint and was made "even more clear" by the plaintiff's responses to interrogatories, yet the defendant failed to remove within thirty days of receipt of either); *Campbell v. Bayou Steel Corp.*, 338 F.Supp.2d 896, 902–03 (N.D.Ill. 2004) (removal was untimely where, although the allegations of the complaint were sufficient to put the defendants on notice of the existence of diversity jurisdiction, "[i]f Defendants entertained genuine doubts concerning the amount in contro-

versy," such doubts should have been dispelled by the plaintiff's responses to interrogatories, yet the defendants failed to remove until after they had taken the plaintiff's deposition); *Jeffrey M. Goldberg & Assocs. v. Collins, Tuttle & Co.,* 739 F.Supp. 426, 430 (N.D.Ill.1990) (finding that the addition of a "new tortious interference claim" that did not change the basic legal theory in an initially removable complaint did not set running a new thirty-day period for removal). *See also Gilardi v. Atchison, Topeka & Santa Fe Ry. Co.,* 189 F.Supp. 82, 85 (N.D.Ill.1960) (noting that the "policy and purpose of Congress [is] to effect removals as early as possible and avoid unnecessary delay."). The Court concludes that diversity jurisdiction does not exist in this case under pre-CAFA federal law.

## CONCLUSION

For the foregoing reasons, this action is **REMANDED** to the Circuit Court of the Twentieth Judicial Circuit, St. Clair County, Illinois, pursuant to 28 U.S.C. § 1447(c) for lack of subject matter jurisdiction. The Motion for Leave to Pay Funds into Court brought by Defendant Owner Operator Independent Driver Risk Retention Group, Inc., is **DENIED as moot** (Doc. 68). The Clerk of Court is **DIRECTED** to mail a certified copy of this remand order to the clerk of the state court and to close the file in this case.

**IT IS SO ORDERED.**