**Faye MORRISON, Kwame Thompson, John Stull, Jeffrey Hartman, Polly Hartman, JPH Development, Inc., Grace Perry, and Courtney Speed, individually and on behalf of similarly situated individuals, Plaintiffs,**

v.

**YTB INTERNATIONAL, INC., YourTravelBiz.com, YTB Travel Network, Inc., YTB Travel Network of Illinois, Inc., REZconnect Technologies, Inc., J. Lloyd Tomer, J. Scott Tomer, J. Kim Sorensen, Andrew Cauthen, and Michael Brent, Defendants.**

Civil Nos. 08–565–GPM, 08–579–GPM.

United States District Court, S.D. Illinois.

June 5, 2009.

Christian G. Montroy, Montroy Law Offices, Brian J. Massimino, Witzel & Kanzler, LLC, St. Louis, IL, for Plaintiffs.

Jonathan S. Quinn, Max A. Stein, Michael D. Richman, Reed Smith, Chicago, IL, Judy L. Cates, Cates Law Firm, Swansea, IL, for Defendants.

### MEMORANDUM AND ORDER

MURPHY, District Judge:

#### INTRODUCTION

The matter before the Court involves two putative class actions that have been consolidated. Plaintiffs Faye Morrison, Kwame Thompson, John Stull, Jeffrey Hartman, Polly Hartman, JPH Development, Inc., ("JPH") Grace Perry, and Courtney Speed assert two claims under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*, ("ICFA") on behalf of themselves and a proposed class of similarly situated persons against Defendants YTB International, Inc., ("YTB International") YourTravelBiz.com, ("YourTravelBiz") YTB Travel Network, Inc., ("YTBTN") YTB Travel Network of Illinois, Inc., ("YTBTNI"), REZconnect Technologies, Inc., ("REZconnect") J. Lloyd Tomer, J. Scott Tomer, J. Kim Sorensen, Andrew Cauthen, and Michael Brent. Federal subject matter jurisdiction is premised on diversity pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, Pub. L. No. 109–2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.) ("CAFA"). The consolidated cases currently are before the Court on Defendants' motion to dismiss for failure to state a claim (Doc. 43) and the motion to dismiss for lack of personal jurisdiction brought by REZconnect and Michael Brent (Doc. 41).

It appears from the Consolidated Complaint in this cause (Doc. 29) that Faye Morrison, Jeff Hartman, Polly Hartman, and Courtney Speed are Missouri citizens, Kwame Thompson is a Georgia citizen, John Stull is an Illinois citizen, and Grace Perry is a Utah citizen.[1] It likewise ap-

---

1. The Consolidated Complaint identifies JPH only as a Missouri corporation wholly owned by Jeff and Polly Hartman, without specifying the state where JPH is incorporated and the state where it maintains its principal place of business. *See* 28 U.S.C. § 1332(c)(1); *Lyerla v. Amco Ins. Co.*, 461 F.Supp.2d 834, 836 (S.D.Ill.2006) (discussing the rules governing the citizenship of corporations for purposes of diversity jurisdiction). However, the omission seems trivial in light of CAFA's requirement of only minimal diversity of citizenship, e.g., that one plaintiff or member of a class or proposed class be diverse from one defendant, *see Buller Trucking Co. v. Owner Operator Indep. Driver Risk Retention Group, Inc.*, 461 F.Supp.2d 768, 772 (S.D.Ill.2006), a requirement that clearly is satisfied in this case. For the same reason, it seems unnecessary to inquire into the citizenship of the 1–100 Does joined as Defendants in the original complaint in this cause. In cases filed originally in federal court, as this case was, the citizenship of Doe defendants is relevant to the existence of diversity jurisdiction. *See Howell v. Tribune Entertainment Co.*, 106 F.3d 215, 218 (7th Cir.1997); *Moore v. General Motors Pension Plans*, 91 F.3d 848, 850 (7th Cir.1996). How-

pears that YTB International, YourTravel-Biz, and YTBTN are incorporated under the laws of the State of Delaware and have their principal places of business in Wood River, Illinois, while YTBTNI is incorporated under the laws of the State of Illinois and has its principal place of business in Wood River. REZconnect is incorporated under the laws of the State of Delaware and has its principal place of business in New Jersey. J. Lloyd Tomer is an Illinois citizen domiciled in Edwardsville, Illinois, and a founder of YTB International as well as the Chairman of its Board. J. Scott Tomer is an Illinois citizen domiciled in Edwardsville and a founder of YTB International as well as its Chief Executive Officer ("CEO"). J. Kim Sorensen is an Illinois citizen domiciled in Edwardsville and a founder and president of YTB International who also serves as the CEO of· YTBTN. Andrew Cauthen is an Illinois citizen domiciled in Edwardsville and the president and chief executive of YourTravelBiz. Michael Brent is a New Jersey citizen and the CEO of REZconnect.

According to the Consolidated Complaint YTB International is the parent company of YourTravelBiz, YTBTN, and REZconnect, which are wholly owned subsidiaries of YTB International; YTBTNI is a subsidiary of YTBTN. The Consolidated Complaint alleges that YTB International and its subsidiaries· earn substantial revenues by selling online travel agencies to persons like Plaintiffs who are interested in working part-time or full-time in the travel industry. According to the Consolidated Complaint, YourTravelBiz markets online travel agencies through a network of Independent Marketing Representatives ("IMRs"); the sales price for a travel agency is a one-time fee of as much as $449.95 and a monthly fee of $49.95 thereafter. The travel agencies are sold by IMRs to Referring Travel Agents ("RTAs"). The Consolidated Complaint alleges that Defendants provide incentives for IMRs to buy their own travel agencies by offering to reimburse travel agency fees to IMRs under certain circumstances. For·example, an IMR/RTA who sells three travel agencies to RTAs who become certified qualifies for reimbursement of that IMR/RTA's initial one-time RTA fee. Similarly, an IMR/RTA who sells six travel agencies qualifies for reimbursement of that IMR/RTA's monthly RTA fee for every month during which the sold travel agencies remain active. The Consolidated Complaint alleges that IMRs receive "marketing commissions" based upon the sale of travel agencies, and that in addition to earning direct marketing commissions by personally recruiting RTAs to buy travel agencies, IMRs also earn marketing commissions based upon all "downline" travel agency sales made either by the original IMR's recruits or by subsequent generations of recruits. YTBTN along with its subsidiary YTBTNI oversees travel-related services provided by or through RTAs. REZconnect, according to the Consolidated Complaint, operates as a travel vendor relationship management company for travel agencies. The Consolidated Complaint alleges that RTAs·are required to utilize the services provided by REZcon-

ever, given CAFA's requirement of minimal diversity there is no need to examine the citizenship of the Doe parties, who are not, in any event, joined in the Consolidated Complaint. *See Caterpillar Inc. v. Lewis,* 519 U.S. 61, 73, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996) (defects in complete diversity of citizenship are curable by dismissal of diversity-defeating parties). Finally, it perhaps is worth noting that the operative complaint in *Hartman v. YTB International, Inc.,* Civil No. 08–579–GPM, which has been consolidated with this case, named as Plaintiffs Susan Kleine and David Kleine, neither of whom are named in the Consolidated Complaint and who have been terminated from this action. The Kleines are Missouri citizens.

nect, including, but not limited to, online services.

Count I of the Consolidated Complaint alleges a violation of 815 ILCS 505/2A(2) in that Defendants' business constitutes an illegal pyramid sales scheme as defined by 815 ILCS 505/1(g).[2] Specifically, Plaintiffs allege, they paid money to YTB International and/or one or more of its subsidiaries in the form of fees for travel agencies and, in exchange, Plaintiffs received the opportunity to earn marketing commissions and rebates, or reimbursements, of RTA fees primarily based upon the inducement of additional persons to participate in the pyramid scheme by buying travel agencies and not primarily based upon the sale of travel or any other goods or services to consumers. Count II of the Consolidated Complaint alleges a violation of 815 ILCS 505/2A(1), in that Defendants' actions constitute an illegal chain referral sales technique.[3] Specifically, Plaintiffs allege, YTB International, by and though its subsidiaries, induced Plaintiffs to buy travel agencies by promising to reimburse travel agency fees contingent upon the sale of additional travel agencies to the RTAs enrolled by the original IMR. Plaintiffs, all of whom are onetime RTAs and IMRs, seek $100,000,000 in actual and punitive damages as well as injunctive relief on behalf of themselves and a proposed class defined as "All IMRs who paid non-reimbursed RTA fees to YTB International, Inc. and/or any of its subsidiaries." Doc. 29 ¶ 40.

## ANALYSIS

### A. Motion to Dismiss for Failure to State a Claim

Turning first to Defendants' motion to dismiss for failure to state a claim, as an initial matter the Court notes the standard under which it must evaluate the instant motion. On a motion to dismiss for failure to state a claim upon which relief can be granted, the Court accepts all well-pleaded allegations in a plaintiff's complaint as true. *See* Fed.R.Civ.P. 12(b)(6); *Cleveland v. Rotman*, 297 F.3d 569, 571 (7th Cir.2002). The purpose of a Rule 12(b)(6) motion is to decide the adequacy of the complaint, not to determine the merits of the case. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.1990). A complaint should not be dismissed unless it either fails to provide adequate notice—as has been required consistently under Rule 8 of the Federal Rules of Civil Procedure—or does not contain "enough facts to state a claim to relief that is plausible on

2. The ICFA prohibits "pyramid sales schemes," 815 ILCS 505/2A(2), and defines a pyramid sales scheme as:

[A]ny plan or operation whereby a person in exchange for money or other thing of value acquires the opportunity to receive a benefit or thing of value, which is primarily based upon the inducement of additional persons by himself or others, regardless of number to participate in the same plan or operation and is not primarily contingent on the volume or quantity of goods, services, or other property sold or distributed or to be sold or distributed to persons for purposes of resale to consumers.
815 ILCS 505/1(g).

3. The ICFA prohibits "chain referral sales technique[s]," stating, in relevant part:

The use or employment of any chain referral sales technique, plan, arrangement or agreement whereby the buyer is induced to purchase merchandise upon the seller's promise or representation that if buyer will furnish seller names of other prospective buyers or like or identical merchandise that seller will contact the named prospective buyers and buyer will receive a reduction in the purchase price by means of a cash rebate, commission, credit toward balance due or any other consideration, which rebate, commission, credit or other consideration is contingent upon seller's ability to sell like or identical merchandise to the named prospective buyers, is declared to be an unlawful practice within the meaning of this Act.
815 ILCS 505/2A(1).

its face," that is, the claim has not been "nudged ... across the line from conceivable to plausible[.]" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In other words, the Rule 12(b)(6) standard establishes two "easy-to-clear hurdles" for a valid complaint: (1) whether it contains enough detail to provide a defendant with "fair notice of what the ... claim is and the grounds upon which it rests"; and (2) whether its allegations "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *EEOC v. Concentra Health Servs., Inc.,* 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the ... grounds ... of his ... entitle[ment] to relief ... requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (citations omitted).

■ In this instance, Defendants argue that Plaintiffs have failed adequately to plead fraud, as well as proximate causation and damages. They argue also that Plaintiffs who are not Illinois residents cannot bring claims under the ICFA and that Plaintiffs are not consumers within the meaning of the ICFA and therefore lack standing to sue under the statute. With respect to the adequacy of Plaintiffs' pleading of fraud, proximate causation, and damages, it should be noted that Plaintiffs argue that their claims do not aver fraud. However, while it is true that the ICFA prohibits unfair trade practices as well as deceptive ones, Plaintiffs' Consolidated Complaint does contain incidental references to deceptive trade practices by Defendants and, taken as a whole, appears to allege deceit by Defendants, so that it is reasonable to suppose that the gravamen of Plaintiffs' claims is fraud. Assuming this is in fact the case, Rule 9 of the Federal Rules of Civil Procedure requires, of course, that "[i]n alleging fraud ... a party must state with particularity the circumstances constituting fraud," Fed. R.Civ.P. 9(b), a requirement that applies to claims of deceptive business practices under the ICFA. *See Eromon v. Grand Auto Sales, Inc.,* 351 F.Supp.2d 825, 827 (N.D.Ill.2004). The purpose of Rule 9(b) is to ensure both that allegations of fraud are grounded in adequate pre-filing investigation and that a party accused of fraud has sufficient notice of the specific activity that a plaintiff claims constitutes fraud so that the accused party may file an effective responsive pleading. *See Lachmund v. ADM Investor Servs., Inc.,* 191 F.3d 777, 783 (7th Cir.1999); *Ackerman v. Northwestern Mut. Life Ins. Co.,* 172 F.3d 467, 469 (7th Cir.1999); *Crichton v. Golden Rule Ins. Co.,* Civil No. 06–264–GPM, 2006 WL 2349961, at *4 (S.D.Ill. Aug. 11, 2006). When Rule 9(b) is read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure, which requires, of course, only a short and plain statement of a plaintiff's claim, the former mandates merely that a plaintiff must plead the "bare bones" of a fraudulent scheme, by supplying "a brief sketch of how the fraudulent scheme operated, when and where it occurred, and the participants," the reason being that under the liberal discovery provisions of the Federal Rules of Civil Procedure, "[m]ore information can be gathered through discovery." *Tomera v. Galt,* 511 F.2d 504, 508–09 (7th Cir.1975).

■ In this instance, Plaintiffs' Consolidated Complaint displays sufficient pre-filing investigation and supplies an adequate sketch of the alleged fraudulent scheme and the role each Defendant supposedly played in it. Also, Rule 9(b) generally is relaxed where facts pertinent to a

plaintiff's claim of fraud are in the exclusive possession of a defendant and can be disclosed only through discovery. *See Emery v. American Gen. Fin., Inc.*, 134 F.3d 1321, 1323 (7th Cir.1998) (noting that Rule 9(b) is not intended to "create a Catch-22 situation in which a complaint is dismissed because of the plaintiff's inability to obtain essential information without pretrial discovery ... that she could not conduct before filing the complaint[.]"). Here it seems likely that Plaintiffs have pleaded to the extent of their knowledge at this time, and more information will have to be yielded through discovery. In sum, Plaintiffs' allegations, to the extent they sound in fraud and deceit, are not subject to dismissal under Rule 9(b). As for Plaintiffs' allegations with respect to proximate causation and damages, neither of these elements of their claims is required to be pleaded with particularity. At the pleading stage, all that is necessary to allege proximate causation is to assert, as Plaintiffs do, that after the alleged misrepresentations were made, Plaintiffs enrolled in Defendants' unlawful scheme as IMRs and RTAs. *See Connick v. Suzuki Motor Co.*, 174 Ill.2d 482, 221 Ill.Dec. 389, 675 N.E.2d 584, 595 (1996) (allegations that, after an auto manufacturer suppressed material facts about the safety of certain sport utility vehicles, consumers purchased the vehicles were sufficient to plead proximate causation under the ICFA: "[T]he required allegation of proximate cause is minimal since that determination is best left to the trier of fact."). *See also AGFA Corp. v. Wagner Printing Co.*, No. 02 C 2400, 2002 WL 1559663, at *4 (N.D.Ill. July 10, 2002). With respect to damages, as noted Plaintiffs seek to recover non-reimbursed RTA fees, together with punitive damages, which appears to be the proper measure of damages.

A more serious issue is that of extraterritorial application of the ICFA. As noted, of the eight named Plaintiffs in this case,

only John Stull is an Illinois resident. In *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill.2d 100, 296 Ill.Dec. 448, 835 N.E.2d 801 (2005), the court decertified a nationwide class action against an Illinois-based automobile insurer under the ICFA, holding that the members of the class who were not Illinois residents lacked standing to sue under the statute. *See id.*, 296 Ill.Dec. 448, 835 N.E.2d at 849–55. The *Avery* court held that an out-of-state resident may have a private right of action under the ICFA, but the statute does not apply to "fraudulent transactions which take place outside Illinois." *Id.*, 296 Ill. Dec. 448, 835 N.E.2d at 853. Conversely, the court held, "a plaintiff may pursue a private cause of action under the [ICFA] if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." *Id.*, 296 Ill.Dec. 448, 835 N.E.2d at 853–54. In determining whether the claims under the ICFA brought by the out-of-state class representatives in *Avery* had the requisite nexus with Illinois, the court examined the place of residence of those plaintiffs, where the misrepresentations at issue in the case were made, where the damage to the plaintiffs occurred, and whether the plaintiffs communicated with the insurer or its agents in Illinois. *See id.*, 296 Ill.Dec. 448, 835 N.E.2d at 854–55. Importantly, the court rejected the notion that an allegation that a defendant was headquartered in Illinois or that its deceptive practices flowed from Illinois was sufficient to assert a claim. The court held that an allegation that "a scheme to defraud was 'disseminated' from [a defendant's] headquarters [in Illinois] is insufficient" to establish standing to sue under the ICFA. *Id.*, 296 Ill. Dec. 448, 835 N.E.2d at 855. "[W]here the only connection with Illinois is the headquarters of the defendant or the fact that a scheme 'emanated' from Illinois, the [ICFA] 'does not apply to the claims of the

non-Illinois plaintiffs[.]' " *Id.* (quoting *Rohlfing v. Manor Care, Inc.,* 172 F.R.D. 330, 340 & n. 10 (N.D.Ill.1997)). Because the non-Illinois plaintiffs in *Avery* could show only that the fraudulent scheme alleged in their complaint emanated from the insurer's headquarters in Illinois, the Court found that the non-Illinois plaintiffs could not assert claims under the ICFA on behalf of themselves and a nationwide class.

■ In this case, the only possible basis for allowing Plaintiffs Morrison, Thompson, the Hartmans, JPH, Perry, and Speed to assert claims under the ICFA is that Defendants YTB International, YourTravelBiz, YTBTN, and YTBTNI are headquartered in Illinois and the business practices complained of in the Consolidated Complaint supposedly emanated from Illinois. All of the named Plaintiffs save Stull reside, as noted, outside Illinois, any representations that were made to the non-Illinois Plaintiffs by Defendants doubtless were received outside Illinois, and the damages of those Plaintiffs were incurred outside Illinois. In opposition to *Avery* Plaintiffs rely heavily upon *Hall v. Sprint Spectrum L.P.,* 376 Ill.App.3d 822, 315 Ill. Dec. 446, 876 N.E.2d 1036 (2007), in which the court held for purposes of a class certification decision that a choice-of-law provision in a contract authorized the application of Kansas law to the claims of a forty-eight state class. *See id.,* 315 Ill. Dec. 446, 876 N.E.2d at 1040–44. In view of *Hall* Plaintiffs contend that a choice-of-law provision in "Terms and Conditions"

contracts for IMRs and RTAs, including Plaintiffs, stating that Illinois law governs those contracts authorizes the application of the ICFA to the claims of non-Illinois Plaintiffs and class members. However, in *Hall* the court acknowledged expressly that it was not dealing with the issue of extraterritorial application of a statute, most notably the ICFA. *See id.,* 315 Ill. Dec. 446, 876 N.E.2d at 1041. Accordingly, *Hall* is inapposite here and instead *Avery* furnishes the correct rule of law in this case.[4] The Court holds that, notwithstanding any choice-of-law provision in a contract (and, as Defendants point out, it is not at all clear with which of the Defendants the contract containing the choice-of-law clause supposedly was made), under *Avery* the non-Illinois Plaintiffs in this case cannot maintain ICFA claims.[5]

■■ Assuming that only Stull, as an Illinois resident, is entitled to assert a claim under the ICFA, there remains the problem that he is not a "consumer" within the meaning of the statute. For ICFA purposes, "[t]he term 'consumer' means any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 ILCS 505/1(e). Correspondingly, persons or entities that purchase goods for use in a business are not consumers within the meaning of the ICFA. *See Williams Elecs. Games, Inc. v. Garrity,* 366 F.3d 569, 579 (7th Cir.2004) (a business purchaser is not a "consumer" under the ICFA because his only use of

---

**4.** For the same reason the Court finds *Hall* unpersuasive in this case, the Court likewise finds as unavailing Plaintiffs' reliance on *Martin v. Heinold Commodities, Inc.,* 117 Ill.2d 67, 109 Ill.Dec. 772, 510 N.E.2d 840 (1987). As the Illinois Supreme Court observed in *Avery,* while *Martin* held that the application of Illinois law to a multistate class was consistent with constitutional due process, it did not address the scope of the ICFA as a matter of

statutory interpretation. *See Avery,* 296 Ill. Dec. 448, 835 N.E.2d at 855 (citing *Martin*).

**5.** Naturally, a determination that the non-Illinois Plaintiffs cannot maintain claims under the ICFA also means that Plaintiffs' proposed class, which, as noted, currently is nationwide, must be redrawn to avoid extraterritorial application of the ICFA.

the purchased product is as an input into making of the product that he sells); *First Magnus Fin. Corp. v. Dobrowski,* 387 F.Supp.2d 786, 794 (N.D.Ill.2005) (a mortgage company was not a consumer and thus could not maintain a claim against a title insurer under the ICFA where the company sold a loan and the title insurance that went along with it on the secondary mortgage market in the ordinary course of its business). Plaintiffs contend that they are consumers for ICFA purposes because they were "end-users" of licenses to sell travel as RTAs and of online services provided by YTB International and its subsidiary REZconnect. This argument is clever, but a more plausible reading of the allegations of the Consolidated Complaint is that Plaintiffs in fact used goods and services sold by YTB International, Inc., and its subsidiaries in their own online travel businesses, so that they are not consumers for purposes of the ICFA. The fact that an ICFA plaintiff is not a consumer is not necessarily fatal to a claim under the statute, provided the claim satisfies the "consumer nexus" test, that is, it involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns. *See ASI Acquisition, LLC v. Rayman,* No. 01 C 165, 2002 WL 335311, at *2 (N.D.Ill. Feb. 28, 2002); *Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.,* 190 Ill.App.3d 524, 137 Ill.Dec. 409, 546 N.E.2d 33, 40–41 (1989). Accordingly, Stull must amend his ICFA claim to allege the requisite consumer nexus. *See Gadson v. Newman,* 807 F.Supp. 1412, 1421 (C.D.Ill.1992) (allegations that deceptive trade practices increased health care costs satisfied the consumer nexus requirement for standing under the ICFA).

## B. Motion to Dismiss for Lack of Personal Jurisdiction

■ Turning next to the motion to dismiss for lack of personal jurisdiction

brought by REZconnect and Michael Brent, a brief recitation of the standard under which such a motion must be evaluated is in order. On a motion to dismiss for lack of personal jurisdiction brought pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, a plaintiff bears the burden of proving that personal jurisdiction exists. *See Central States, S.E. & S.W. Areas Pension Fund v. Reimer Express World Corp.,* 230 F.3d 934, 939 (7th Cir.2000). When a motion to dismiss is to be decided solely on written materials and without an evidentiary hearing, the plaintiff need only make a prima facie case for personal jurisdiction. *See Neiman v. Rudolf Wolff & Co.,* 619 F.2d 1189, 1190 (7th Cir.1980). In deciding the motion to dismiss, the court may receive and consider affidavits from both sides in the case. *See Greenberg v. Miami Children's Hosp. Research Inst., Inc.,* 208 F.Supp.2d 918, 922 (N.D.Ill.2002) (citing *Kontos v. United States Dep't of Labor,* 826 F.2d 573, 576 (7th Cir.1987)). "[A]ll well-pleaded jurisdictional allegations in the complaint are accepted as true unless controverted by affidavit." *Travelers Cas. & Sur. Co. v. Interclaim (Bermuda) Ltd.,* 304 F.Supp.2d 1018, 1021 (N.D.Ill.2004). *See also Turnock v. Cope,* 816 F.2d 332, 333 (7th Cir. 1987). Any conflicts in the pleadings and affidavits are to be resolved in a plaintiff's favor, but a court accepts as true any facts contained in a defendant's affidavits that remain unrefuted by the plaintiff. *See Continental Cas. Co. v. Marsh,* No. 01 C 0160, 2002 WL 31870531, at *2 (N.D.Ill. Dec. 23, 2002) (citing *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1275 (7th Cir. 1997)).

■ In a case based upon diversity of citizenship, a federal district court sitting in Illinois has personal jurisdiction over a nonresident defendant only if an Illinois court would have jurisdiction. *See Netzky v. Fiedler,* No. 00 C 4652, 2001 WL

521396, at *1 (N.D.Ill. May 15, 2001). For an Illinois court to have personal jurisdiction over a nonresident defendant, personal jurisdiction must be permitted by: (1) Illinois statutory law; (2) the Illinois Constitution; and (3) the Constitution of the United States. *See Continental Cas. Co.,* 2002 WL 31870531, at *4. With respect to Illinois statutory law, the Illinois long-arm statute, 735 ILCS 5/2–209, extends personal jurisdiction to the limit allowed under the Illinois Constitution and the United States Constitution. *See LaSalle Bank Nat'l Ass'n v. Epstein,* No. 99 C 7820, 2000 WL 283072, at *1 (N.D.Ill. Mar. 9, 2000) (citing *RAR, Inc.,* 107 F.3d at 1276). "Because the Illinois statute authorizes personal jurisdiction to the [federal] constitutional limits, the three inquiries ... collapse into two constitutional inquiries—one state and one federal." *Continental Cas. Co.,* 2002 WL 31870531, at *4 (quoting *RAR, Inc.,* 107 F.3d at 1276). If jurisdiction is improper under either the Illinois Constitution or the United States Constitution, a court cannot exercise jurisdiction over a defendant. *See Jamik, Inc. v. Days Inn of Mount Laurel,* 74 F.Supp.2d 818, 821 (N.D.Ill.1999). As a practical matter, it should be noted, in the absence of important differences in controlling federal and state case law, district courts in this Circuit typically analyze personal jurisdiction solely with reference to federal due process standards, not Illinois due process standards. *See, e.g., Continental Cas. Co.,* 2002 WL 31870531, at *4 (conducting only a federal due process analysis because the parties did not present any evidence to suggest that the outcome would be otherwise under state law); *United Fin. Mortgage Corp. v. Bayshores Funding Corp.,* 245 F.Supp.2d 884, 891–92 (N.D.Ill.2002) (condensing the personal jurisdiction analysis to a single federal due process inquiry).

 Under the United States Constitution, the Due Process Clause of the Fourteenth Amendment limits a court's power to assert personal jurisdiction over a nonresident defendant. *See RAR, Inc.,* 107 F.3d at 1277 (citing *Pennoyer v. Neff,* 95 U.S. 714, 733, 24 L.Ed. 565 (1878)). Federal due process requires that a nonresident defendant have certain minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 716 (7th Cir.2002) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). This standard varies according to whether the jurisdiction alleged is general or specific. *See RAR, Inc.,* 107 F.3d at 1277. "[G]eneral jurisdiction allows a defendant to be sued in the forum regardless of the subject matter of the litigation." *Purdue Research Found. v. Sanofi–Synthelabo, S.A.,* 338 F.3d 773, 787 (7th Cir.2003). It is permitted "only where the defendant has 'continuous and systematic general business contacts' with the forum." *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). "Those contacts must be so extensive as to make it 'fundamentally fair to require [defendants] to answer in any [Illinois] court in any litigation arising out of any transaction or occurrence taking place anywhere in the world.'" *Travelers Cas. & Sur. Co.,* 304 F.Supp.2d at 1024 (quoting *Purdue Research Found.,* 338 F.3d at 787) (emphasis omitted).

 By contrast with general jurisdiction, in specific jurisdiction cases a suit must "arise out of" or be "related to" the defendant's minimum contacts with the forum state. *Hyatt Int'l Corp.,* 302 F.3d at 716. In determining whether specific personal jurisdiction exists, a court must first address whether a defendant has "purposefully established minimum contacts within the forum State." *Id.* (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S.

462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). It is critical that the court determine whether the defendant "should reasonably anticipate being haled into court [in the forum State]." *Id.* (quoting *Burger King Corp.*, 471 U.S. at 474, 105 S.Ct. 2174). The defendant may reasonably anticipate being haled into court in the forum state when it has " 'purposefully avail[ed] itself of the privilege of conducting activities' there." *Id.* (quoting *Burger King Corp.*, 471 U.S. at 475, 105 S.Ct. 2174). If the court determines that minimum contacts with the forum exist, the court must then determine whether those contacts would make personal jurisdiction "reasonable and fair under the circumstances." *RAR, Inc.*, 107 F.3d at 1277. After minimum contacts have been established, a defendant "can only escape jurisdiction by making a 'compelling case' that forcing it to litigate in [the forum] would violate traditional notions of fair play and substantial justice." *Logan Prods., Inc. v. Optibase, Inc.*, 103 F.3d 49, 53 (7th Cir. 1996) (quoting *Burger King Corp.*, 471 U.S. at 477, 105 S.Ct. 2174).

 In this instance, the facts adduced by Plaintiffs in support of personal jurisdiction can be summarized as follows. With respect to personal jurisdiction over REZconnect, Plaintiffs assert that REZconnect is a wholly-owned subsidiary of YTB International, which, as noted, is an Illinois-based corporation that does its business entirely through its subsidiaries, including REZconnect, and that REZconnect operates an interactive Internet website that is accessible in Illinois. With respect to Brent, Plaintiffs point out that he is the CEO of REZconnect and a former CEO of YTB International and that he has traveled to Illinois in connection with both positions. As to the fact that REZconnect is a subsidiary of YTB International, "[u]nder Illinois law, a corporation is a legal entity separate and distinct from its shareholders, directors and offi-

cers, and, generally, from other corporations with which it may be affiliated." *Van Dorn Co. v. Future Chem. & Oil Corp.*, 753 F.2d 565, 569 (7th Cir.1985) (citing *Main Bank of Chicago v. Baker*, 86 Ill.2d 188, 56 Ill.Dec. 14, 427 N.E.2d 94 (1981)). *See also Polites v. U.S. Bank Nat'l Ass'n*, 361 Ill.App.3d 76, 296 Ill.Dec. 718, 836 N.E.2d 133, 137 (2005) ("In Illinois, corporations are treated as separate legal entities even where one wholly owns the other and the two have mutual dealings."). Correspondingly, the mere relationship of parent and subsidiary corporations is not in itself sufficient to subject either the parent or the subsidiary to the jurisdiction of the forum state, absent evidence sufficient to warrant the extraordinary step of disregarding the separateness of corporate identity and piercing the corporate veil. *See Integrated Bus. Info. Serv. (Proprietary) Ltd. v. Dun & Bradstreet Corp.*, 714 F.Supp. 296, 299 (N.D.Ill. 1989) (quoting *Uresil Corp. v. Cook Group, Inc.*, No. 88 C 6171, 1988 WL 124335, at *3 n. 5 (N.D.Ill. Nov. 14, 1988)) ("In the absence of any evidence that can justify piercing the corporate veil, the mere relationship of parent corporation and subsidiary corporation is not in itself a sufficient basis for subjecting both to the jurisdiction of the forum state.").

Concerning the existence of so-called "Internet jurisdiction" over REZconnect via its alleged operation of an interactive website in Illinois, numerous federal courts, including the United States Court of Appeals for the Seventh Circuit, have recognized that the exercise of personal jurisdiction can be premised upon a defendant's contact with the forum via the World Wide Web. *See, e.g., Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 549 (7th Cir.2004) (holding that maintenance of a "passive" website which can be accessed in the forum but which does not permit a user to interact with the website does not authorize the exercise of personal jurisdic-

tion, although "the operation of an 'interactive' website, such as one ... on which consumers can order the defendant's goods or services, may subject a defendant to the exercise of personal jurisdiction (either specific or general).". *See also Publications Int'l, Ltd. v. Burke/Triolo, Inc.*, 121 F.Supp.2d 1178, 1182–83 (N.D.Ill.2000); *Euromarket Designs, Inc. v. Crate & Barrel Ltd.*, 96 F.Supp.2d 824, 837–38 (N.D.Ill. 2000) (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa.1997)); *Larochelle v. Allamian*, 361 Ill.App.3d 217, 296 Ill.Dec. 761, 836 N.E.2d 176, 184–85 (2005). REZconnect and Brent argue that the theory of Internet-based personal jurisdiction has been rejected in Illinois, citing *Howard v. Missouri Bone & Joint Center, Inc.*, 373 Ill. App.3d 738, 311 Ill.Dec. 533, 869 N.E.2d 207 (2007). Also, while REZconnect and Brent concede that REZconnect operates two interactive websites, they have submitted evidence showing that REZconnect's websites are not accessible to the general public and are intended solely for the use of established travel agents and agencies, not RTAs.[6]

▆ With respect to *Howard*, the Court notes that its holding that operation of an interactive website in the forum does not authorize the exercise of personal jurisdiction appears to conflict with *Jennings*, which, unlike *Howard*, is an authority binding on this Court. *See Gasbarra v. Park–Ohio Indus., Inc.*, 655 F.2d 119, 122

(7th Cir.1981) (a federal court sitting in diversity is required to apply the law of a state as pronounced by its highest court, not its intermediate courts). More importantly, whatever the merits of the *Howard* decision, the uncontroverted evidence in this case is that REZconnect maintains no interactive websites for the use of Plaintiffs and members of the proposed class. Although Plaintiffs have submitted to the Court several unauthenticated documents showing use of online services by John Stull in connection with a travel business, as REZconnect and Brent point out the website accessed by Stull is clearly identified as being operated by YTBTN, which, according to REZconnect and Brent, is the subsidiary of YTB International that furnishes online services to RTAs for use in their travel businesses. There is simply no evidence before the Court that authorizes the exercise of personal jurisdiction over REZconnect on the basis of its operation of an interactive website in Illinois.

▆ Finally, with respect to the matter of personal jurisdiction over Brent, Plaintiffs have failed to show that the exercise of such jurisdiction comports with traditional notions of substantial justice and fair play. The evidence before the Court is this: Brent, who resides currently in Florida, is the CEO of REZconnect; Brent was the majority shareholder in REZconnect until 2004; Brent was the CEO and a director of YTB International between 2004 and 2006; Brent has traveled to Illi-

---

**6.** REZconnect and Brent concede also that the former generates a certain portion of its revenue from Illinois. In an affidavit submitted to the Court by REZconnect and Brent with a reply brief in support of the instant motion to dismiss for lack of personal jurisdiction, Brent attests that of approximately $3.2 million in gross commissions generated by REZconnect in its business in 2008, only about $8,639.01 was generated from travel agents and agencies originating in Illinois. *See* Doc. 54, Ex. A (Supplemental Affidavit of Michael Brent) ¶ 5. Obviously, this commis-

sion revenue supports the existence of neither general nor specific jurisdiction. Plaintiffs moved to strike the affidavits submitted by REZconnect and Brent in support of their reply brief on the grounds that the affidavits are new evidence to which Plaintiffs had been afforded no opportunity to respond. By order entered May 1, 2009, the Court denied Plaintiffs' motion to strike and granted Plaintiffs seven days to respond to the affidavits if they wished. Plaintiffs filed a short brief in response to the affidavits on May 12, 2009.

nois on two occasions in the past six years, once in 2003 when he visited Alton, Illinois, for a single day on behalf of REZconnect for business reasons and once in 2005 when Brent traveled to Edwardsville and Wood River, Illinois, for a single day to attend a meeting of the board of directors of YTB International; and Brent remains a shareholder of YTB International, although it appears that in 2006 he transferred the voting rights in his shares to J. Lloyd Tomer, J. Scott Tomer, and J. Kim Sorensen. Consistent with the general principle of the distinctness of corporate identity, in the absence of evidence warranting piercing the corporate veil the mere fact of being an employee and shareholder of either REZconnect or YTB International does not make Brent amenable to jurisdiction in Illinois (assuming, that is, that REZconnect itself is subject to such jurisdiction, a proposition that, as discussed, is not tenable). *See Club Assistance Program, Inc. v. Zukerman*, 594 F.Supp. 341, 350 n. 18 (N.D.Ill.1984) (the mere fact that a corporation by which a non-resident is employed or in which he or she is a stockholder is itself subject to Illinois jurisdiction does not subject that non-resident to jurisdiction); *Insull v. New York World–Telegram Corp.*, 172 F.Supp. 615, 634 (N.D.Ill.1959) (same); *Mergenthaler Linotype Co. v. Leonard Storch Enters., Inc.*, 66 Ill.App.3d 789, 23 Ill.Dec. 352, 383 N.E.2d 1379, 1385 (1978) (same).

Finally, such limited contact with Illinois as the record discloses that Brent has had will not support general jurisdiction, nor will it support specific jurisdiction, in the absence of any evidence that Plaintiffs' claims for relief arise out of those contacts. *See McMurray v. Improvenet, Inc.*, No. 00 C 7137, 2001 WL 561376, at **2–3 (N.D.Ill. May 22, 2001) (in a suit by an Illinois employee against his former employer and the president of that corporation, both non-residents of Illinois, holding that personal jurisdiction over the president of the corporation was improper where the president's contacts with Illinois were limited to four visits to Illinois on behalf of the corporation together with numerous telephone communications with the plaintiff which appeared to have no relationship to the plaintiff's claims for relief); *Krok v. Burns & Wilcox, Ltd.*, No. 98 C 5902, 1999 WL 262125, at *3 (N.D.Ill. Apr. 16, 1999) (holding that personal jurisdiction over two non-resident officers and directors of a corporation was not proper where the non-resident defendants' contacts with Illinois consisted of a few visits per year to transact business unrelated to the plaintiff's claims).[7] Where the record discloses no evidence that REZconnect and Brent have purposefully availed themselves of the forum so that they reasonably could anticipate being haled into court in Illinois, those Defendants must be dismissed from this case for lack of personal jurisdiction.[8]

### CONCLUSION

Defendants' motion to dismiss for failure to state a claim (Doc. 43) is **GRANTED in**

---

**7.** Because Brent's contacts with Illinois do not support the exercise of general or specific jurisdiction, it is unnecessary for the Court to reach the issue raised by Brent as to whether he is entitled to invoke the fiduciary shield doctrine, which holds generally that personal jurisdiction may not be exercised over a non-resident agent or employee of a corporation whose contacts with the forum arose from acts committed solely as a fiduciary of the corporation. *See Allman v. McGann*, No. 02 C 7442, 2003 WL 1811531, at *6 (N.D.Ill. Apr. 4, 2003); *Glass v. Kemper Corp.*, 930 F.Supp. 332, 340–41 (N.D.Ill.1996); *Rollins v. Ellwood*, 141 Ill.2d 244, 152 Ill.Dec. 384, 565 N.E.2d 1302, 1317–18 (1990).

**8.** It should be noted that in the brief Plaintiffs filed in response to the reply brief of REZconnect and Brent in support of the instant mo-

part and **DENIED in part.** The motion is granted with respect to the claims of Plaintiffs Faye Morrison, Kwame Thompson, Jeffrey Hartman, Polly Hartman, JPH, Grace Perry, and Courtney Speed on the grounds that, as non-residents of Illinois, they may not invoke the ICFA, and the claims of these Plaintiffs are **DISMISSED without prejudice.** Also, the motion is **GRANTED** with respect to the claim of Plaintiff John Stull, and Stull's claim under the ICFA is **DISMISSED without prejudice** and with leave to re-file the claim to allege the requisite consumer nexus for purposes of standing under the ICFA. In all other respects the motion to dismiss is **DENIED.** The motion to dismiss for lack of personal jurisdiction brought by REZconnect and Michael Brent (Doc. 41) is **GRANTED.** The claims asserted against REZconnect and Brent are **DISMISSED without prejudice.** Stull is **ORDERED** to file an amended complaint in conformity with this Order not later than **twenty (20) days** from the date of entry of this Order.

**IT IS SO ORDERED.**

tion to dismiss for lack of personal jurisdiction Plaintiffs assert somewhat ambiguously that they should be granted leave to conduct discovery as to the issue of personal jurisdiction. In light of the evidence submitted to the Court by REZconnect and Brent it is impossible to discern how such discovery could yield evidence sufficient to sustain the exercise of personal jurisdiction over the non-resident Defendants, nor do Plaintiffs offer any clue as to what evidence they believe such discovery will yield. "Jurisdictional discovery is appropriate where the existing record is inadequate to support personal jurisdiction and a party demonstrates that it can supplement its jurisdictional allegations through discovery." *LG*

*Elecs., Inc. v. Quanta Computer Inc.,* 520 F.Supp.2d 1061, 1072 (W.D.Wis.2007) (internal citations omitted). The decision to allow such discovery is discretionary, and it is a proper exercise of discretion to deny leave to conduct discovery where, as in this case, the facts before the Court are sufficient to establish the absence of personal jurisdiction and the party requesting discovery has failed to explain either how it proposes to conduct discovery or what it expects to find, so that the requested discovery amounts merely to a fishing expedition. *See Blanco Oso Int'l Trading Co. v. Southern Scrap Material Co.,* 735 F.Supp. 294, 297 (N.D.Ill.1990) (citing Fed. R.Civ.P. 12(d)).