In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-2529

FAYE MORRISON, *et al.*,

*Plaintiffs-Appellants*,

*v.*

YTB INTERNATIONAL, INC., *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 08-565-GPM—**G. Patrick Murphy**, *Judge*.

ARGUED FEBRUARY 25, 2011—DECIDED JULY 27, 2011

Before EASTERBROOK, *Chief Judge*, and FLAUM and ROVNER, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Plaintiffs allege that YTB International, a firm based in Illinois and doing business as both YTB and YourTravelBiz.com, is violating the Illinois Consumer Fraud Act. That statute forbids pyramid schemes, 815 ILCS 505/2A(2), which it defines as any venture in which a participant's profit "is primarily based upon the inducement of additional

persons . . . to participate in the same plan or operation and is not primarily contingent on the volume or quantity of goods, services, or other property sold or distributed . . . to consumers." 815 ILCS 505/1(g). YTB (as we call defendants collectively) denies that its operation, in which its customers sell each other the right to act as travel agencies, as well as selling travel services to the public, comes within this statutory ban. (In discussing the prohibition of pyramid schemes, we do not imply that this is the entirety of plaintiffs' complaint. They also accuse YTB of lying to potential customers. For simplicity we limit discussion to the complaint's reliance on §505/2A(2).)

The district court did not decide whether YTB operates a pyramid scheme. First it ruled that YTB's transactions with residents of states other than Illinois do not occur predominantly in Illinois and so are outside the Act. 641 F. Supp. 2d 768 (S.D. Ill. 2009), reconsideration denied, 2010 U.S. Dist. LEXIS 38405 (Apr. 19, 2010). Then the court dismissed the claims of persons who do live in Illinois, concluding that the suit—as pared down by the first step—is an intra-state controversy that belongs in state court under 28 U.S.C. §1332(d)(4). 2010 U.S. Dist. LEXIS 51970 (S.D. Ill. May 26, 2010).

Plaintiffs—seven persons plus one corporation—want to represent a class of everyone, in any state, who has participated in YTB's home-travel-agency program. The proposed class has more than 100 members, the stakes exceed $5 million, and at least one plaintiff is a citizen of a different state from at least one defendant (minimal

diversity). Plaintiffs invoked federal jurisdiction under §1332(d)(2), part of the Class Action Fairness Act of 2005. YTB acknowledged that the complaint meets the statutory requirements but sought to trim the suit by contending that class members from states other than Illinois lack standing to seek relief under the Illinois Consumer Fraud Act. After the district court agreed with that contention, YTB argued that the remaining controversy is centered in Illinois, so that §1332(d)(4) requires the court to "decline to exercise jurisdiction under" §1332(d)(2). The district judge agreed with this argument too, which brought the suit to an end.

There is a problem with this two-step procedure. Section 1332(d)(4) applies when at least two-thirds of the members of "the proposed class" reside in the same state as the principal defendant. Plaintiffs have never proposed a class limited to residents of Illinois. The class that plaintiffs propose is nationwide; that's why they filed suit in federal court. Subject-matter jurisdiction depends on the state of things when suit is filed; what happens later does not detract from jurisdiction already established. Thus we held in *Johnson v. Wattenbarger*, 361 F.3d 991 (7th Cir. 2004), that a district court may not dispose of some claims on the merits, then dismiss the suit for lack of jurisdiction because the remaining claims fall short of the minimum amount in controversy. And we applied this principle to the Class Action Fairness Act in *Cunningham Charter Corp. v. Learjet, Inc.*, 592 F.3d 805 (7th Cir. 2010), which holds that §1332(d) supplies jurisdiction even if the district judge decides not to certify the proposed class. What

matters is the size of the proposed class, and the stakes, on the date a suit is filed (or removed under §1453, if it began in state court). The "proposed class" in this suit is not centered in Illinois, and §1332(d)(4) therefore does not govern.

YTB believes that the district judge was entitled to apply §1332(d)(4) to the all-Illinois class that resulted from the dismissal of other plaintiffs for lack of standing. After all, standing is a jurisdictional requirement, derived from the case-or-controversy language in Article III. If the non-Illinois class members lacked standing, then the only claim that was *ever* within the district court's jurisdiction was one by persons who live in Illinois—and, if that's so, then §1332(d)(4) requires the court to send the class to state court.

Yet although the district judge many times wrote that the non-Illinois plaintiffs lack "standing," the word is not an accurate description of what the court held. YTB moved to dismiss the complaint with respect to non-Illinois class members under Fed. R. Civ. P. 12(b)(6), contending that choice-of-law principles articulated in *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 179–87 (2005), show that the Illinois Consumer Fraud Act does not apply to its customers outside Illinois. That's a contention that the non-Illinois class members should lose on the merits—which is what the district court held. It dismissed the complaint *with prejudice*. A jurisdictional dismissal, by contrast, would have been under Rule 12(b)(1) rather than 12(b)(6), and without prejudice.

The district court's language was imprecise. There's no problem with standing. Plaintiffs have standing if they have been injured, the defendants caused that injury, and the injury can be redressed by a judicial decision. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 102–04 (1998). Plaintiffs allege that they are victims of a pyramid scheme that saddled them with financial loss, which YTB caused. The judiciary can redress that injury by ordering YTB to pay money to the victims. Nothing more is required for standing. If the Illinois Consumer Fraud Act law does not apply because events were centered outside Illinois, then plaintiffs must rely on some other state's law; this application of choice-of-law principles has nothing to do with *standing*, though it may affect whether a class should be certified—for a class action arising under the consumer-fraud laws of all 50 states may not be manageable, even though an action under one state's law could be. See *In re Bridgestone/Firestone, Inc., Tires Products Liability Litigation*, 288 F.3d 1012 (7th Cir. 2002). Cf. *Wal-Mart Stores, Inc. v. Dukes*, No. 10-277 (U.S. June 20, 2011). That a plaintiff's claim under his preferred legal theory fails has nothing to do with subject-matter jurisdiction, see *Bell v. Hood*, 327 U.S. 678 (1946), unless the claim is so feeble as to be "essentially fictitious". *Hagans v. Lavine*, 415 U.S. 528, 537 (1974). Not even YTB contends that the claim by the non-Illinois residents is that weak.

To put this differently, subject-matter jurisdiction is a synonym for adjudicatory competence. *Morrison v. National Australia Bank Ltd*., 130 S. Ct. 2869, 2876–77 (2010). A federal court is the wrong forum when there is

no case or controversy, or when Congress has not autho-
rized it to resolve a particular kind of dispute. Other
deficiencies in a plaintiff's claim concern the merits
rather than subject-matter jurisdiction. Cf. *Bond v.
United States*, 131 S. Ct. 2355 (2011). All class members (no
matter where they live) have an Article III controversy
with YTB, and §1332(d) authorizes federal judges to
resolve big-stakes, multi-state class actions. Most mem-
bers of the only "proposed class" live outside Illinois.
It follows that §1332(d)(4) does not apply. The jurisdic-
tion created by §1332(d) covers the case as a whole; re-
solving any part of it on the merits means that it is in
federal court until the job has been finished.

We recognize that §1332(d)(4) does not itself diminish
federal jurisdiction. It directs district judges to "decline
to exercise" jurisdiction otherwise present and thus is
akin to abstention. See *Graphic Communications Union v.
CVS Caremark Corp.*, 636 F.3d 971, 973 (8th Cir. 2011). But
the language of §1332(d)(4) does not suggest that this
principle applies to a subset of the plaintiffs; it takes
the "proposed class" as a given. If the suit as a whole
is predominantly interstate, the district court must
resolve the whole.

This means that we also need to decide whether the
district court was right to think that the non-Illinois
plaintiffs lack a valid claim under the Consumer
Fraud Act. *Avery* concludes that the Act applies to non-
residents' claims when "the circumstances that relate to
the disputed transaction occur primarily and substantially
in Illinois." 216 Ill. 2d at 187. That's a fuzzy standard.

The state court tried to curtail uncertainty by giving one illustration of events that satisfy the standard, and another that does not. It said that these circumstances supported use of the Act in *Martin v. Heinold Commodities, Inc.*, 117 Ill. 2d 67 (1987), which *Avery* summarized this way:

> (1) the contracts containing the deceptive statements were all executed in Illinois; (2) the defendant's principal place of business was in Illinois; (3) the contract contained express choice-of-law and forum-selection clauses specifying that any litigation would be conducted in Illinois under Illinois law; (4) complaints regarding the defendant's performance were to be directed to its Chicago office; and (5) payments for the defendant's services were to be sent to its Chicago office.

*Avery*, 216 Ill. 2d at 189. In *Avery*, by contrast, the lead plaintiff's circumstances were:

> Avery resides in Louisiana, not Illinois. His car was garaged in Louisiana and his accident occurred there as well. Avery's estimate was written in Louisiana and he received his "Quality Replacement Parts" brochure in Louisiana. The alleged deception in this case—the failure to disclose the inferiority of non-OEM parts [which State Farm uses to repair its customers' cars following accidents]—also occurred in Louisiana. The repair of Avery's car took place in Louisiana. Damage to Avery, if any, occurred in Louisiana. Moreover, there is no evidence

that Avery ever met or talked to a State Farm employee who works in Illinois. Avery's contact with State Farm was through a Louisiana agent, a Louisiana claims representative, and a Louisiana adjustor. In sum, the overwhelming majority of the circumstances which relate to Avery's . . . claims proceedings—the disputed transactions in this case—occurred outside Illinois.

216 Ill. 2d at 188. The only fact favoring application of Illinois law was that State Farm's headquarters, where the replacement-parts policy was adopted, is in Illinois. Avery had no contacts with Illinois, and the policy was applied to him entirely in Louisiana. The Supreme Court of Illinois held that Louisiana rather than Illinois law should govern his situation; after all, Louisiana might have no problem with the use of non–OEM ("original equipment manufacturer") parts even if Illinois wants its residents to get OEM parts and pay more for insurance in order to cover the cost. Insurance policies in Illinois and Louisiana could be priced differently and carry different benefits.

Our plaintiffs maintain that their situation is like Martin's. Their complaint alleges that they dealt directly with YTB, which does business in Illinois, and that all of the travel-agency deals were executed in Illinois—or at least "accepted" by YTB in Illinois after being placed over the Internet. YTB required every plaintiff to sign a contract that provides for litigation in Illinois under Illinois law. *Avery* holds that a choice-of-law clause is not dispositive, because a claim under the Consumer Fraud

Act is independent of the contract, see 216 Ill. 2d at 168–70, but *Martin* says that it is nonetheless a mark in plaintiffs' favor. Plaintiffs also allege that their payments were sent to YTB in Illinois, and that any payments from YTB when they secured other agents (a vital part of a pyramid scheme) came from Illinois. They assert that any complaints had to be sent to YTB in Illinois and were resolved by it in Illinois. Unlike State Farm, YTB does not have offices or representatives in other states; the only way to deal with YTB is through its head-quarters in Illinois. YTB also conducted training sessions, regional meetings, and "red carpet days" for members of the plaintiff class in Illinois.

Many things that plaintiffs say about their relations with YTB could be inverted. If Faye Morrison (the lead plaintiff) dealt with YTB in Illinois, it dealt with her in Missouri. (Morrison and three other plaintiffs live in Missouri; one lives in Georgia; one lives in Utah; one lives in Illinois. The corporate plaintiff is a Missouri firm with its principal place of business in Missouri.) Morrison sent payments *to* Illinois, which means that any loss occurred *in* Missouri. YTB and Morrison transacted electronically through a network that is no more "in" Illinois than it is in Thailand. This could be important if applying Illinois law would frustrate some policy of Missouri, Georgia, Utah, or another state. Some states allow gambling; others don't. Some allow fireworks; others don't. Perhaps some allow pyramid schemes. Expanding Illinois law in a way that overrode the domestic policy of other states would be problematic. See

*Midwest Title Loans, Inc. v. Mills*, 593 F.3d 660 (7th Cir. 2010).

Yet YTB does not contend that any state allows pyramid schemes, or even that any state defines a pyramid scheme differently from the way Illinois does. It contends that its business is entirely lawful, because it does not operate a pyramid scheme on any understanding of that phrase. This argues for uniform application of Illinois law—which is what plaintiffs want, what YTB wants (or said it wants when it required all plaintiffs to assent to the application of Illinois law), and what will enable one court to resolve the controversy under the law of the state in which YTB operates its business.

Perhaps this is not enough to *compel* a conclusion that Illinois law applies; *Avery*'s standard is not exactly self-defining, and the Supreme Court of Illinois said that "each case must be decided on its own facts" (216 Ill. 2d at 187), a formula that gives the trier of fact substantial latitude and implies deferential appellate review. But if we can't say that the complaint and answer contain enough to point unerringly to Illinois law, we can say that the complaint does not *defeat* application of Illinois law. Recall that the district court dismissed the out-of-Illinois plaintiffs' claim under Rule 12(b)(6). It did not take evidence, make findings of fact, or weigh the incommensurable factors in *Avery*'s formula; it was not entitled to do any of these things on a motion to dismiss the complaint.

Complaints need not do more than narrate a plausible claim for relief. See *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). Plaintiffs may not be able to prove what they allege, or the trier of fact eventually may characterize the facts in a way that defeats the non-resident plaintiffs' reliance on Illinois law, but this complaint survives a motion to dismiss under Rule 12(b)(6).

One last issue. YTB contends that some, maybe all, of the plaintiffs are businesses and therefore cannot sue under the Illinois *Consumer* Fraud Act. YTB calls the plaintiffs businesses because they sought financial gain. If this makes a person a "business," however, then the statutory ban on pyramid schemes is a dead letter. The circumstances that define a venture as a pyramid scheme also would define the participants as "businesses," which would put them outside the Act.

A federal court should not read a state law in a way that makes it self-defeating. Plaintiffs are consumers in the sense that they purchased a product from YTB. That YTB's product is a (supposedly) money-making program does not make plaintiffs "businesses" in their dealings with YTB, even if they would be classified as businesses in their dealings with people who want to get from Los Angeles to Lahore. Many decisions hold that purchasers of home-business packages are "consumers" for the purpose of the Federal Trade Commission Act. See, e.g., *FTC v. Freecom Communications, Inc.*, 401 F.3d 1193 (10th Cir. 2005); *FTC v. Medical Billers Network, Inc.*, 543 F. Supp. 2d 283 (S.D.N.Y. 2008). Federal courts have reached the same conclusion for state laws similar to the Illinois Consumer Fraud Act. See, e.g., *Hofstetter v.*

*Fletcher*, 905 F.2d 897 (6th Cir. 1988). No decision by an Illinois court suggests that it would disagree with that approach under the Consumer Fraud Act. The Illinois judiciary has yet to address the subject one way or the other, so we lack any basis for predicting that it would agree with YTB rather than precedents in other jurisdictions.

The judgment is vacated, and the case is remanded for further proceedings consistent with this opinion.